BOARD OF REGENTS OF UNIVERSITY OF WISCONSIN SYSTEM, d/b/a The University of Wisconsin-Madison, Plaintiff-Respondent, v. MUSSALLEM, Defendant-Appellant.

Supreme Court

No. 77–422. Submitted on briefs February 7, 1980.—Decided March 4, 1980.
(Also reported in 289 N.W.2d 801.)

658

For the appellant the cause was submitted on the briefs of *Ralph A. Kalal* of Madison.

For the respondent the cause was submitted on the brief of *John P. Schuster* and *Schuster & Carroll* of Madison.

COFFEY, J. The plaintiff, Board of Regents of the University of Wisconsin System, commenced an action on January 21, 1977, for collection of loans made to the defendant while attending law school (during the period from September, 1965 to June, 1968). This is an appeal from an order of the trial court denying the defendant-appellant's, Victor Mussallem, motions: (1) to dismiss on the grounds that the cause of action was barred by the six-year statute of limitations or alternatively on the grounds of lack of subject matter jurisdiction; (2) to strike the affidavits in support of the plaintiff-respondent's, Board of Regents, motion for summary judgment; (3) to compel discovery and for production of documents, and the granting of judgment in favor of the plaintiff.

In its complaint the plaintiff Board of Regents alleged the following:

"That on or about September 9, 1966, the defendant and plaintiff entered into an agreement whereby the plaintiff would, subject to the terms and conditions of a signed note, a true and correct copy of which is attached hereto, loan certain sums of money to said defendant for the purpose of financing his education.

"That on or about the following dates, additional moneys were advanced to said defendant, under the aforementioned agreement, said additional moneys becoming a part of the principal due under the note evidencing said agreement: 12–14–66; 1–25–67; 9–14–67; 1–8–68; 9–10–68.

"That demand has been made for payments under the above agreement, but none have been forthcoming and, under the terms of said agreement, the defendant is therefore in default.

"That, under the terms of the above-described agreement, as set forth in the attached note, all of the money loaned to the defendant, along with interest at three percent (3%) per annum, is now due and owing, the total amount due being $5729.63, the principal amount being $4630.00 of said total, the interest through February, 1977, having been added thereto.

"That, under the terms of said agreement, the plaintiff has declared the above balance to be due in its entirety."

The plaintiff demanded judgment in the amount of $5,-729.63, plus costs and interest from March 1, 1977, until the date of payment.

The defendant moved to dismiss the plaintiff's cause of action, pursuant to sec. 802.06, Stats., on the grounds that it was barred by the six-year statute of limitation governing actions on contracts, obligations or liabilities (sec. 893.19(3), Stats.[1]). The court, in denying the defendant's motion to dismiss, found it to be an instrument under seal and therefore the 20-year statute of limitation (sec. 893.16(2), Stats.[2]), controlled rather than the six-year statute, as Mussallem alleged. Following the denial of his motion to dismiss, the defendant filed an answer, asserting a general denial and also again raising the six-year statute of limitation as an affirmative defense.

Thereafter, the plaintiff brought a motion for summary judgment contending that ". . . there is no genuine issue as to any material fact and the plaintiff is entitled to judgment as a matter of law." In response to

---

[1] Sec. 893.19(1) . . .

"(2) . . .

"(3) establishes the limitation as ". . . within 6 years . . . [for] an action upon any other contract, obligation or liability, express or implied, except those mentioned in ss. 893.16 and 893.18."

[2] Sec. 893.16 establishes the limitation as ". . . within 20 years . . . [for] [a]n action upon a sealed instrument when the cause of action accrues within this state. . . ."

the plaintiff's motion for summary judgment, the defendant moved for an order:

"1. Striking the 'Affidavit of Regular and Usual Procedure' of Marjorie K. Buchanan annexed to Plaintiff's Motion for Summary Judgment, upon the grounds that said affidavit contained no evidentiary facts relevant to this action which would be admissible in evidence under Wisconsin Statute §904.06(2).

"2. Striking the Supplemental Affidavit of Charles S. Lueck in support of plaintiff's Motion for Summary Judgment, upon the grounds that Paragraphs Three, Four, Five and Six of said affidavit are made upon information and belief, contrary to Wisconsin Statute §802.08(3), and to strike the words 'under seal' from Paragraph Four of said affidavit, upon the ground that said language is a legal conclusion rather than a statement of fact."

In addition, he also filed motions:

1. to compel the plaintiff to answer the defendant's interrogatories, No. 4(c) and No. 4(c)(1),[3] and also to produce certain documents (*i.e.*, the appellant's loan application forms and the note) ; and

2. to dismiss the cause of action on the grounds that the court was without subject matter jurisdiction as the respondent failed to serve a Notice of Right to Cure as required by secs. 425.104 and 425.105, Stats., until after the commencement of the present action on September 30, 1977.

The plaintiff, in responding to the motion to produce, pointed out that the defendant had previously received a copy of the note appended to the complaint (Exhibit A) and that he had knowledge that the loan application

---

[3] The interrogatories read as follows:

"4(c) State with particularity the terms of any contract entered into between Plaintiff and Defendant concerning said sum [$1,050.00], which contract was made prior to September, 1966."

"4(c)(1) State who now has possession of any such contract."

forms were available for inspection at the office of the plaintiff's attorney.

The court denied the defendant's motions and entered judgment in favor of the plaintiff, Board of Regents, reciting the following in its findings:

1. the appellant had waived his right to the defense of lack of subject matter jurisdiction by not raising it "before pleading" or by including it in a "responsive pleading" [as required by sec. 802.06 (2), Stats.,[4]];

2. ". . . all relevant documents were made available to the defendant. . ." and thus there was no need for an order to compel production of the documents;

3. the affidavits made in support of the motion for summary judgment were made upon personal knowledge and thus permissible, pursuant to sec. 802.08 (3), Stats.[5]

---

[4] Sec. 802.06 (2), Stats., provides in part as follows:

"(2) HOW PRESENTED. Every defense, in law or fact, except the defense of improper venue, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or 3rd party claim shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (a) lack of capacity to sue or be sued, (b) lack of jurisdiction over the subject matter, (c) lack of jurisdiction over the person or res, (d) insufficiency of summons or process, (e) untimeliness or insufficiency of service of summons or process, (f) failure to state a claim upon which relief can be granted, (g) failure to join a party under s. 803.03, (h) res judicata, (i) statute of limitations, (j) another action pending between the same parties for the same cause. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. . . ."

[5] "802.08. Summary judgment. (1) . . .

"(2) . . .

"(3) SUPPORTING PAPERS. Supporting and opposing affidavits shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence. Copies of all papers or parts thereof referred to in an affidavit shall be attached thereto and served therewith, if not already of record.

4. "The defendant had not denied the existence of the obligation to pay, that he is the maker of the note or that the amount specified (or 'sum certain') is accurate," thus the plaintiff is entitled to judgment as ". . . [n]o material facts are in dispute, no competing inferences can arise, and the law applicable to this situation is clear."

The defendant appeals from the order denying his motions and granting judgment.

*ISSUES*

1. Is sec. 425.104, Stats., and/or sec. 425.105, dealing with Notice to Cure Default of the Wisconsin Consumer Act, applicable to student loans granted under the control of a university board of regents or trustees?

2. If secs. 425.104 and 425.105, Stats., are applicable, did the plaintiff's failure to comply with the provisions deprive the trial court of subject matter jurisdiction?

3. Does the six-year statute of limitation, or the twenty-year statute of limitation for contracts under seal apply in this case?

4. Did the trial court err in granting the motion for summary judgment?

5. Did the trial court err in denying the defendant's motion to strike the affidavits in support of the plaintiff's motion for summary judgment on the grounds that they were not based on the personal knowledge of the affiants as required by sec. 802.08(3), Stats?

The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party."

6. Did the trial court err in refusing to order discovery of documents which the defendant contends were essential to determining the character of the document which is the basis of the suit?

The appellant, in seeking to avoid his obligation to repay his $4,630 student loan for a law school education, contends that ch. 425, Wisconsin Consumer Act, applies in this case and the failure of the plaintiff to serve a notice of right to cure a default before commencement of the action to recover on the loans deprived the trial court of subject matter jurisdiction.

The general threshold question of the issues facing this court is whether the Wisconsin Consumer Act and specifically sec. 425.105, Stats., applies to college student loans provided through the University.

The Wisconsin Consumer Act was enacted by the Wisconsin legislature as ch. 239 of the Session Laws (1971). The Act constituted a comprehensive revision of the law governing consumer transactions. The underlying purposes and policies of the Act, as stated in sec. 421.102(2), Stats., are as follows:

"(a) To simplify, clarify and modernize the law governing consumer transactions;

"(b) To protect customers against unfair, deceptive, false, misleading and unconscionable practices by merchants;

"(c) To permit and encourage the development of fair and economically sound consumer practices in consumer transactions; and

"(d) To coordinate the regulation of consumer credit transactions with the policies of the federal consumer credit protection act."

The provision of the Act which the defendant contends applies in this case is sec. 425.105, Stats., which provides in part as follows:

"425.105 Cure of default. (1) A merchant may not accelerate the maturity of a consumer credit transaction,

commence any action except as provided in s. 425.205(6), or demand or take possession of collateral or goods subject to a consumer lease other than by accepting a voluntary surrender thereof (s. 425.204), unless the merchant believes the customer to be in default (s. 425.103), and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104 if the customer has the right to cure under this section.

"(2) Except as provided in sub. (3), for 15 days after such notice is given, a customer may cure a default under a consumer credit transaction by tendering the amount of all unpaid instalments due at the time of the tender, without acceleration, plus any unpaid delinquency or deferral charges, and by tendering performance necessary to cure any default other than nonpayment of amounts due. The act of curing a default restores to the customer his rights under the agreement as though no default had occurred.

"(3) A right to cure shall not exist if the following occurred twice during the preceding 12 months:

"(a) The customer was in default on the same transaction or open-end credit plan;

"(b) The creditor gave the customer notice of the right to cure such previous default in accordance with s. 425.104; and

"(c) The customer cured the previous default.

"(4) With respect to consumer credit transactions in which the creditor has a security interest in, and possession of, instruments or documents (s. 409.105) which threaten to decline speedily in value, this section does not restrict the creditor's rights to dispose of such property pursuant to s. 409.504 and the terms of his security agreement."

Sec. 425.105(1), Stats., applies only to *consumer credit transactions*.

The Act, sec. 421.301(10), Stats., defines a consumer credit transaction as:

". . . a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in instalments or for which credit a fi-

nance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans."

In light of the stated purposes and policies of the Act and also the definition of a consumer credit transaction, it is clear that the general legislative intent and theme of the Consumer Act was to govern the relationship between retail merchants and their consumers who are engaging in a business for profit. Therefore, in order for sec. 425.105, Stats. (Notice of Cure of Default), to control the collection of the defendant's student loan in this case, it is imperative that we first decide whether the University of Wisconsin qualifies as a *merchant* for purposes of this Act.

A merchant is defined in sec. 421.301(25), Stats., as:

". . . a person who regularly advertises, distributes, offers, supplies or deals in real or personal property, services, money or credit in a manner which directly or indirectly results in or is intended or designed to result in, lead to or induce a consumer transaction. The term includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such persons. The term also includes a person who by his occupation holds himself out as having knowledge or skill peculiar to such practices or to whom such knowledge or skill may be attributed by his employment as an agent, broker or other intermediary."

Barrett and Jones, in their article entitled *Wisconsin Consumer Act—A Freak Out?*, point out that the legislature has given the term *merchant* a broader meaning than usually attributed to the term:

". . . the strange definition of 'merchant' . . . includes not only merchants who are really merchants but also lenders, banks, insurance companies, credit unions, small loan companies, creditors, assignees, manufacturers, les-

sors, and brokers." Barrett and Jones, *Wisconsin Consumer Act—A Freak Out?*, 57 Marq. L.R. 483, 494 (1974).

At the same time, while the legislature has failed to define the outer limits of the term merchant with certainty, it is evident that they did not intend it to apply to or include an educational institution.

In *Town of Menominee v. Skubitz*, 53 Wis.2d 430, 192 N.W.2d 887 (1972), this court held:

". . . that the meaning of some words in a statute may be enlarged or restricted in order to harmonize them with the legislative intent of the entire statute. *State ex rel. Neelen v. Lucas* (1964), 24 Wis.2d 262, 268, 128 N.W. 2d 425; *Mutual Federal Savings & Loan Asso. v. Savings & Loan Advisory Comm.* (1968), 38 Wis.2d 381, 387, 157 N.W.2d 609. It is the spirit or intention of the statute which should govern over the literal meaning of the language used. *State ex rel. Jackson v. Leicht* (1939), 231 Wis. 178, 183, 285 N.W. 335. The object to be accomplished by the statute must be given great weight in determining the legislative intent. *Loof v. Rural Mut. Casualty Ins. Co.* (1961), 14 Wis.2d 512, 516, 111 N.W.2d 583." *Id.* at 437.

Thus, in this case we must look to the intent, spirit and object to be accomplished in the statutory definition of a merchant in order to determine its meaning and also whether a university, private or public, qualifies as such when its primary purpose is in the educational pursuits of training and developing scholars, as contrasted to a retailer, a bank, insurance company, etc., whose primary purpose is profit making.

The whole tenor of the Consumer Act demonstrates that it was intended to apply to:

1. retail merchants who deal directly with the consumer public and are regularly in the *business* of extending credit; and

2. private, commercial, *i.e.*, nongovernmental, businesses which are operated for profit.

We know of no case law or logical reasoning which would lead us to the conclusion that a loan from a university board of regents or trustees to a student is the type of transaction which the Consumer Act was intended to regulate. While it is recognized that a university, pursuant to its participation in college loan programs such as the National Defense Student Loan program[6] (NDSL), does extend credit or loans to its students, but only as a conduit of governmental funds, and thus is not in the business of extending credit. The University of Wisconsin-Madison, an arm of the state, is a member of the University of Wisconsin System as represented by a Board of Regents, and is certainly not a private, commercial business. Secondly, its purpose is not one of earning a profit, but rather it is motivated by a public, nonprofit purpose:

"The mission of the [University] system is to develop human resources, to discover and disseminate knowledge, to extend knowledge and its application beyond the boundaries of its campuses and to serve and stimulate society by developing in students heightened intellectual, cultural and humane sensitivities, scientific, professional and technological expertise and a sense of purpose. Inherent in this broad mission are methods of instruction, research, extended training and *public service designed to educate people and improve the human condition.* Basic to every purpose of the system is the search for truth." (Emphasis supplied.) Sec. 36.01(2), Stats.

*See: Lister v. Board of Regents,* 72 Wis.2d 282, 240 N.W. 2d 610 (1976). Therefore, we hold that an educational institution, such as the University of Wisconsin and other public and private, nonprofit institutions of higher learning are not merchants under the Consumer Act[7]

---

[6] *See:* National Defense Education Act of 1958, 20 U.S.C.S. §401 et seq.

[7] This court recognizes that the Act does apply to some educational type services, as provided in sec. 421.301(42)(a)2, Stats.

and thus the Act does not apply in this case so as to require the University to give the defendant a 15 day notice of the right to cure a default prior to commencing an action. Furthermore, notice was not a condition precedent to subject matter jurisdiction. The Consumer Act, however, does apply to college student loans obtained from merchants, such as private financial institutions, banks, savings & loans, credit unions, etc.

Moreover, we also hold that the Wisconsin Consumer Act does not apply to a university as a matter of public policy because its application would have an adverse impact on college loan programs offered through universities throughout this state. The added regulation of the Consumer Act would restrict or limit the ability of universities and other private, nonprofit institutions of higher education to fully and more completely fulfill their purpose.

An additional issue before the trial court was whether the Board of Regents' cause of action to collect on the debt was barred by the statute of limitations. The debtor contended that the six-year period of limitation for contracts was controlling while the creditor argued that the contract was one under seal and thus the twenty-year period of limitation provided in sec. 893.16, Stats.,[8] applied. The promissory note establishes that the plaintiff's cause of action and thus the statute of limitations began to run as of March, 1970, but the present action was not commenced until January 21, 1977. Therefore, the six-year statute of limitation applied, thus the six-year statute of limitation barred the plaintiff's claim. The trial court found the loan agreement to be a contract under

However, we believe that the reference to educational services in the Act was intended to apply to private profit making business colleges or trade schools that provide credit or loans to their students, not state universities or nonprofit educational institutions.

[8] *See:* fn. 2.

seal and therefore not barred by the twenty-year statute of limitations for contracts under seal.

■

A document or contract signed under seal is one which "includes the word 'seal,' the letters 'LS' and a scroll or other device intended to represent a seal." Sec. 990.01 (37), Stats.[9] We hold there is no dispute that the first loan agreement (promissory note) signed by the debtor met the requirements of sec. 990.01(37), and was thus a contract under seal. In fact, the defendant, in his brief, fails to argue that the initial loan agreement was not a sealed instrument. Next we shall discuss the issue of whether this contract under seal encompasses the subsequent advances made to the defendant at the start of each semester without further application on the part of the debtor and/or acceptance by the University.

■

When determining the intent of the parties to a contract, case law establishes that courts may consider the surrounding circumstances including factors occurring before and after the signing of an agreement. *Central*

---

[9] Sec. 990.01, Stats., reads in part as follows:

"990.01 **Construction of laws; words and phrases.** In the construction of Wisconsin laws the words and phrases which follow shall be construed as indicated unless such construction would produce a result inconsistent with the manifest intent of the legislature:

". . .

"(37) SEAL. Except for the sealing of instruments by persons required to have and use official seals, 'seal' includes the word 'seal,' the letters 'L S' and a scroll or other device intended to represent a seal, if any is affixed in the proper place for a seal, as well as an impression of a seal on the instrument. An instrument executed in the corporate name, by the proper officers of a corporation, under any seal is sealed even though the corporate seal is not used. If the seal of any court or public officer is required to be affixed to any paper issuing from such court or officer 'seal' includes an impression of such official seal made upon the paper alone."

*Auto Co. v. Reichert,* 87 Wis.2d 9, 273 N.W.2d 360 (Ct. App. 1978). In this case the original document, signed under seal, was a "master application" entered into in anticipation of future advances of money. The promissory note recited that the debtor "promises to pay . . . such amounts as may from time to time be advanced to me and endorsed hereon. . ." (Emphasis supplied.) The parties, cognizant of the need for future loans, as evidenced by the preceding underlined language, sought to obviate the need for repetitious application each semester and thus facilitate the granting of loans from a university to its students. Moreover, the schedule of future advances was contained in the note (same document) signed by the defendant under seal and thus constituted a single, non-severable contract providing for a continuing debtor-creditor relationship. We hold that the original promissory note and schedule of future advances constituted a single contract under seal. Since the agreement was one made under seal, the twenty-year statute of limitation period, sec. 893.16, Stats., was applicable in this case and thus the plaintiff's cause of action to collect on the contract is not barred.

Next the appellant contends that the trial court erred in granting the plaintiff's motion for summary judgment in this case. In *Taterka v. Ford Motor Co.,* 86 Wis.2d 140, 271 N.W.2d 653 (1978), this court held that:

". . . summary judgment may be granted where there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. Sec. 802.08 (2), Stats. The trial court is to determine from the pleadings and affidavits whether a cause of action is alleged and whether any material issues of fact are presented. *Krezinski v. Hay,* 77 Wis.2d 569, 572, 573, 253 N.W.2d 522 (1977). Summary judgment may be granted where there is no factual dispute or where no competing inferences arise from undisputed facts and the law re-

solving the issues is clear. *Lecus v. American Mut. Ins. Co. of Boston,* 81 Wis.2d 183, 189, 260 N.W.2d 241 (1977) ; *Matthew v. American Family Mut. Ins. Co.,* 54 Wis.2d 336, 339, 195 N.W.2d 611 (1972)." *Id.* at 144. *See also: Peters v. Holiday Inns, Inc.,* 89 Wis.2d 115, 278 N.W.2d 208 (1979) and *Lawver v. Boling,* 71 Wis.2d 408, 238 N.W.2d 514 (1976).

Moreover, in *Edlebeck v. Barnes,* 63 Wis.2d 240, 216 N.W.2d 551 (1974), this court stated that:

". . . in those cases where the material facts are not in dispute, no competing inferences can arise, and the law that resolves that issue is clear and overrides any other issues either factual or legal which may appear, then summary judgment should be granted." *Id.* at 243.

As a general rule, "[O]n summary judgment the burden is on the moving party to establish the absence of a genuine, that is, disputed, issue as to any material fact." *Kraemer Bros. v. United States Fire Ins. Co.,* 89 Wis.2d 555, 565, 278 N.W.2d 857 (1979). In this case the affidavits in support of the motion for summary judgment, along with a copy of the note, established that the defendant was the maker of the promissory note, that he was obliged to pay $4,630 plus interest and has failed to make any payments on the note (*i.e.,* in default). While it is the moving party's responsibility to initially establish a *prima facie* case for summary judgment, once it is established the party in opposition to the motion may not rest upon the mere allegations or denials of the pleadings, but must, by affidavits or other statutory means, set forth specific facts showing that there exists a genuine issue requiring a trial. Sec. 802.08 (3), Stats.[10] Where the party opposing summary judgment (the defendant in this case) fails to respond or raise an issue of

[10] *See:* fn. 5.

material fact, the trial court is authorized to grant summary judgment pursuant to sub. (3) of sec. 802.08. In this case the defendant failed to respond to the summary judgment motion, either by affidavits or otherwise, and furthermore failed to set forth any facts to demonstrate to the satisfaction of the trial court that a genuine issue of fact existed for trial.

In its written decision the court found no material facts to be in dispute, the existence of no competing inferences and the law resolving the issues to be clear:

"The defendant has not denied the existence of the obligation to pay, that he is the maker of the note, or that the amount specified (or 'sum certain') is accurate."

Thus the court granted plaintiff's motion for summary judgment.

When reviewing the trial court's decision to grant summary judgment this court has held that it must proceed by applying the standards and methods set forth in the new rule for granting summary judgment as recited in sec. 802.08, Stats., just as the trial court applied them. *Wright v. Hasley*, 86 Wis.2d 572, 579, 273 N.W.2d 319 (1979). Thus, pursuant to this standard of review, this court must uphold a grant of summary judgment ". . . if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." We hold, based on the record, the affidavits in support of the motion and the defendant's failure to demonstrate the existence of any disputed facts, that the entry of summary judgment was appropriate in this case as there was no genuine issue of material fact raised and the plaintiff was entitled to summary judgment as a matter of law.

On appeal, in his brief, the defendant also contends,[11] for the first time, that an issue of material fact did exist and thus summary judgment should not have been granted in this case. Specifically, the defendant alleges that:

"There has been no showing that any consideration was advanced for the sealed document upon which this suit is based. For that reason alone the trial court's grant of summary judgment should be reversed."

Sec. 891.27, Stats., provides that "[A] seal upon an executory instrument shall be received as only presumptive evidence of a sufficient consideration." Moreover, in *Prestin v. Baumgartner*, 47 Wis.2d 574, 177 N.W.2d 825 (1970), this court held that:

"Under sec. 891.27, Stats., a seal upon an executory instrument is presumptive evidence of sufficient consideration. *See: Estate of Cortte* (1939), 230 Wis. 103, 106, 283 N.W. 336; *Spankus v. West* (1936), 222 Wis. 238, 267 N.W. 910." *Id.* at 578.

In light of sec. 891.27, Stats., and the ruling case law cited in *Prestin v. Baumgartner, supra,* and the fact that the defendant's note was under seal, we hold there to be no factual dispute as to the existence of sufficient consideration. Therefore, in this case there was no issue of fact presented to the trial court requiring the necessity of a trial and thus it was not an abuse of discretion for the trial court to grant the plaintiff's motion for summary judgment.

The defendant's last two contentions of error by the trial court are:

---

[11] It should again be noted that the defendant failed to raise this issue in the trial court at the time the motion for summary judgment was brought, in fact, the defendant offered no response at all.

(1) the court's failure to strike the affidavits in support of the plaintiff's motion for summary judgment as statutorily insufficient because they were not based on personal knowledge; and

(2) the failure of the court to order production of certain documents (note and loan application forms) which he contends were essential to the determination of factual questions in this case. These contentions of error are wholly without merit and are thus summarily dismissed. The record establishes and the trial court found that the affidavits in support of the plaintiff's motion for summary judgment were based on the personal knowledge of the affiants and thus consistent with sec. 802.08 (3), Stats.[12] Similarly, the trial court was ". . . satisfied that all relevant documents were made available to the defendant. . ." i.e., the promissory note was attached to the summons and complaint when served on the defendant and the loan applications were made available at all times at the office of the plaintiff's attorney. We agree with the findings of the trial court. Therefore, we hold that the trial court properly denied the defendant's motions to (1) strike the affidavits in support of the plaintiff's motion for summary judgment; and (2) order production of the note and loan applications.

*By the Court.*—Order and judgment affirmed.

EXHIBIT "A"

THE UNIVERSITY OF WISCONSIN

National Defense Student Loan Promissory Note
No. 04796

Mussallem, Victor A., hereinafter called the maker, (and any guarantors, endorsors, sureties or cosigners) promise

---

[12] *See:* fn. 5.

to pay to The University of Wisconsin, hereinafter called the Institution, located at Madison, Wisconsin, such amounts as may from time to time be advanced to me and endorsed hereon, together with all assessed charges, attorneys' fees and other costs and charges for the collection of any amount not paid when due according to the terms of this note. The maker further understands and agrees, and it is understood between the parties that:

I. Repayment of principal, together with interest thereon, shall be made over a period, commencing (except when paragraph 111(2) applies) nine months after the date on which the maker ceases to carry, at an institution of higher education (as defined in the National Defense Education Act of 1958 as amended and regulations pertaining thereto), or at a comparable institution outside the States approved for this purpose by the Commissioner, at least one-half the full-time academic workload as determined by the institution granting the loan, and ending ten years and nine months after such date. Interest, at the rate of three percentum per annum, shall accrue from the beginning of such repayment period. Repayment of principal, together with interest thereon, shall be made in equal Quarterly installments in accordance with the schedule which is attached to and made part of this note. Notwithstanding the repayment schedule otherwise calculable pursuant to this paragraph, the maker shall repay the principal of this loan at the rate of not less than fifteen dollars ($15) per month. In the event the maker receives or has received other National Defense Student Loans at one or more other institutions, he shall repay this note at a monthly rate equal to not less than the amount by which fifteen dollars ($15 ) exceeds the total monthly rate of repayment on all such other loans.

II. All sums advanced pursuant to this note are drawn from a fund created under the National Defense Educa-

tion Act of 1958 as amended. Such terms of this note as are subject to interpretation shall be construed in the light of Federal Regulations pertaining to such Act, a copy of which shall be kept by the institution.

III. This note is subject also to the following conditions:

(1) The maker may at his option and without penalty prepay all or any part of the principal plus the accrued interest at any time.

(2) Interest shall not accrue on the loan, and installments need not be paid during any period, (a) during which the maker is carrying, at an institution of higher education or at a comparable institution outside the States approved for this purpose by the Commissioner, at least one-half the normal full-time academic workload as determined by the institution, (b) not in excess of three years during which the maker is a member of the Armed Forces of the United States, (c) not in excess of three years during which the maker is in service as a volunteer under the Peace Corps Act, or (d) not in excess of three years during which the maker serves as a volunteer under Section 603, of the Economic Opportunity Act of 1964 (Volunteers in Service to America); any such period in (a), (b), (c), or (d) shall not be included in determining the ten-year period during which repayment must be completed.

(3) If the maker undertakes service as a full-time teacher in a public or other nonprofit elementary or secondary school or institution of higher education in a State, or in an elementary or secondary school overseas of the Armed Forces of the United States, the amount of this note shall be reduced at the rate of ten per centum of the total amount of the loan plus interest thereon for each complete academic year or its equivalent (as determined under the regulations of the Commissioner) of

such service, up to a maximum of 50 per centum of the principal plus interest thereon.

(4) If, commencing with the academic year 1966–67, the maker undertakes service as a full-time teacher in a public or other nonprofit elementary or secondary school which is in the school district of a local educational agency which is eligible in such year for assistance pursuant to Title II of P.L. 81–874, as amended, and which, for purposes of this clause, for that year has been determined by the Commissioner, to be a school in which there is a high concentration of students from low-income families, the amount of this note shall be reduced at the rate of 15 per centum of the total amount of the loan plus interest thereon for each complete academic year or its equivalent (as determined under regulations of the Commissioner) of such service.

(5) In the event of the maker's death or total and permanent disability, the unpaid indebtedness hereunder shall be cancelled.

(6) The maker is responsible for informing the institution to which he is indebted under this note (or any subsequent legal holder) of any change or changes in his address.

(7) Loan proceeds are to be used to further the education of the recipient.

IV. The maker further understands and agrees, and it is understood between the parties that, if the maker fails to make timely payment of all or any part of an installment, or if the maker is eligible for deferral or cancellation of payment, but fails to submit timely and satisfactory evidence thereof, the maker promises to pay a charge assessed against him by the institution. This charge will not exceed three dollars ($3) for the first quarter or part thereof in which the installment or evidence is late and six dollars ($6) for each quarter or part thereof thereafter in which the installment or evidence

is late, if the institution elects to add the charge to the outstanding principal of the loan, the institution will inform the maker prior to the due date of the next installment.

V.  If any installment is not paid when due, the holder shall have the right to declare the unpaid balance immediately due and payable without notice, notice thereof being hereby expressly waived.  The undersigned jointly and severally agree to pay, in addition to the amount of such unpaid balance, a reasonable sum as attorneys' fees and all costs and expenses of any legal proceedings for the collection of any amount due on this note.

VI.  And to secure the payment hereof, the makers, signers, endorsors, sureties and guarantors jointly and individually hereby authorize irrevocably any attorney of any court of record to appear for them or either of them in any court, in term time, or vacation, at any time hereafter, and confess judgment without process, in favor of the holder of this note, for such amount as may appear to be unpaid, and in default according to the terms of this note; together with costs, including reasonable attorneys' fees, hereby waiving and releasing all errors which may intervene in any such proceedings, and consent to the immediate issue of execution upon such judgment, hereby ratifying and confirming all that said attorney may do by virtue hereof.

VII.  The maker hereby certifies that he has received no other National Defense Student Loans except as indicated in the Schedule of Previous National Defense Student Loans (other institutions) and Schedule of Advances below.

1234 dwight St.  9-7-66  Victor a. ......... (Seal)

ADDRESS                        DATE                        SIGNATURE OF MAKER

**GUARANTY:** To be completed by Guarantor—parent, guardian, or other acceptable Guarantor—if maker is under 18 years of age.

FOR VALUE RECEIVED, the undersigned jointly and severally guarantee payment of the within note according to its terms and hereby agree to all the provisions thereof.

SIGNED AND SEALED

_____ (Seal)

ADDRESS                        DATE                        SIGNATURE OF GUARANTOR

## SCHEDULE OF PREVIOUS NATIONAL DEFENSE STUDENT LOANS (OTHER INSTITUTIONS).

| | Amount | Date | Institution | Signature of Maker |
|---|---|---|---|---|
| 1. | $ | | | 39014 SEP 966 |
| 2. | | | | |
| 3. | | | | 39015 SEP 966 |
| 4. | | | | |

## SCHEDULE OF ADVANCES

| | Amount | Semester | Date | Signature of Maker |
|---|---|---|---|---|
| 1. | $ 1050.00 | to date 9/66 | | Victor Brunelli |
| 2. | 725.00 | 1/ 66-67 | 9/9/66 | Victor Brunelli |
| 3. | 125.00 | 1 - 66/67 | 12/14/66 | Victor Brunelli |
| 4. | 600.00 | 2 66-67 | 1-2-67 | Victor Brunelli |
| 5. | 800.00 | 1 67-68 | 9-14-67 | Victor Brunelli |
| 6. | 500.00 | 2 67-68 | SEP 680 1968 | Victor Brunell |
| 7. | 530.00 | 1-68-69 | SEP 680 1968 | Victor Brunell |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |
| 11. | | | | |
| 12. | | | | |