Jason **ZIMBAUER**, Plaintiff,

v.

**MILWAUKEE ORTHOPAEDIC GROUP, LTD., Dennis M. Sullivan, M.D., Milwaukee Brewers Baseball Club, Inc., and National Union Fire Insurance,** Defendants.

No.: 93–C–1298.

United States District Court, E.D. Wisconsin.

April 3, 1996.

Steven T. Mandell, Law Office of Steven T. Mandell, Northbrook, IL, for plaintiff.

Dan J. Gendreau, Peterson, Johnson & Murray, Milwaukee, WI, for Milwaukee Or-

thopaedic Group, Ltd. and Dennis M. Sullivan.

John E. Cain, Kasdorf, Lewis & Swietlik, Milwaukee, WI, for Milwaukee Brewers.

## DECISION AND ORDER

WARREN, Senior District Judge.

Before the Court is the Recommendation of Magistrate Judge Aaron E. Goodstein on Milwaukee Orthopaedic Group, Ltd.'s and Dr. Dennis M. Sullivan's (hereinafter collectively referred to as "defendants") Motion for Summary Judgment. On November 8, 1995, Magistrate Judge Goodstein recommended that the defendants' Motion for Summary Judgment be granted. On December 15, 1995, plaintiff filed an Objection to the Magistrate Judge's Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 13.03 requesting a *de novo* review of the Magistrate Judge's decision. On December 19, 1995, defendants filed a Response to Plaintiff's Objections. For the following reasons, this Court adopts Magistrate Judge Goodstein's Recommendation and the defendants' Motion for Summary Judgment is GRANTED.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff was a pitcher for the Milwaukee Brewers. On September 11, 1990, after hearing a "pop" in his shoulder while throwing a new pitch, plaintiff first sought medical treatment from defendants. Defendants found no problems. Approximately nine months later, the plaintiff returned complaining of pain due to the new pitch. Defendants diagnosed plaintiff's condition as a recurrent subluxation of the shoulder. For a period of time from June 28, 1991 to April 12, 1993, plaintiff remained in the care of defendants, who performed arthroscopic surgery and capsular shift repair of the shoulder on January 9, 1992, and directed rehabilitation and therapy both before and after the surgery. However, plaintiff's pain continued. On April 17, 1993, plaintiff consulted another physician, Dr. James Hill, who diagnosed a possible partial rotator cuff tear in the shoulder. Subsequent arthroscopy by Dr. Hill

revealed a partial tear of the rotator cuff. Plaintiff is now in constant pain and his use and movement of his arm is limited. He cannot pitch and may need a shoulder replacement by the time he is 30 years old.

On August 11, 1993, plaintiff filed a Complaint in the U.S. District Court for the Northern District of Illinois, Eastern Division, alleging that defendants negligently misdiagnosed and mistreated plaintiff's injured shoulder and that this negligence caused pain and permanent disability. Plaintiff requests compensation in excess of $50,000.00 for past and future pain, mental anguish, bodily injury, permanent disability, medical and hospital expenses, and lost wages. On November 24, 1993, the case was transferred from the Northern District of Illinois, Eastern Division, to the Eastern District of Wisconsin pursuant to a stipulation and Order for Transfer of Venue. Plaintiff amended his Complaint twice to add first the Milwaukee Brewers on August 29, 1994, then National Union Fire Insurance on November 16, 1994, as defendants because of their possible subrogation interests. Defendants' Answer to the Amended Complaint was filed October 20, 1994.

The Court set an initial scheduling order of April 15, 1994, which, in accordance with Local Rule 7.07(d)(1) required plaintiff to disclose all expert witnesses within 60 days after completion of mediation or August 1, 1994, whichever occurred later. On August 29, 1994, plaintiff identified Dr. James A. Hill as his expert witness in response to interrogatories. In a letter dated July 25, 1994, plaintiff's counsel indicated that plaintiff did not intend to name any expert other than Dr. Hill. The scheduling order was amended August 3, 1994 to allow defendants until October 3, 1994, to disclose their expert witnesses. During August, September, and October, 1994, defendants tried unsuccessfully to depose plaintiff's expert witness, Dr. Hill. On October 3, 1994, the Court again amended the scheduling order to allow defendants until November 15, 1994, to name expert witnesses and conduct an interview of plaintiff's medical expert.

On October 28, 1994, defendants filed a Motion to Compel the deposition of plaintiff

and plaintiff's expert witness. The Court granted this Motion to Compel on November 18, 1994, granting defendants until January 13, 1995 to name their expert witnesses, and plaintiff until February 17, 1995 to name rebuttal expert witnesses. Defendants deposed Dr. Hill on January 10, 1995 at his office in Chicago, IL. Plaintiff's counsel was present. At four separate times during the deposition, defendants' counsel inquired whether Dr. Hill had formulated any opinion as to the care and treatment rendered to plaintiff by the defendants. Dr. Hill testified that he had not made an opinion as to the care and treatment rendered to plaintiff by defendants and that he intended neither to make one nor to testify to an opinion at trial. Plaintiff's counsel made no response to these questions or to Dr. Hill's responses, either to object or to clarify the expert witness' testimony.

On March 11, 1995, plaintiff filed a Motion to Name Expert or Clarify. On March 17, 1995, defendants filed a Motion for Summary Judgment and supporting brief. Plaintiff's Motion to Name Expert or Clarify was denied on April 13, 1995. Plaintiff, in its response to defendants' Brief in Support of Motion for Summary Judgment, raised the issue of *res ipsa loquitur* for the first time and included the affidavit of its expert witness, Dr. Hill. Defendants' reply, filed June 8, 1995, protested the applicability of *res ipsa loquitur* and the inclusion of this affidavit following the Court's denial of plaintiff's Motion to Name Expert or Clarify. On November 8, 1995, Judge Aaron Goodstein recommended that the Court grant defendants' Motion for Summary Judgment. Plaintiff filed its objections on December 15, 1995 and defendants responded on December 19, 1995.

## II. *STANDARD OF REVIEW*

A district court must review *de novo* the recommendations of the Magistrate Judge to which either party timely objects. 28 U.S.C. § 636(b)(1)(C); *United States v. Raddatz,* 447 U.S. 667, 673–76, 100 S.Ct. 2406, 2411–13, 65 L.Ed.2d 424 (1980). The Court may review *de novo* any other aspect of the Recommendation as it sees fit. *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986)

("[T]he statute should be read as permitting modifications and *de novo* determinations by the district judge at all times but *mandating de novo* determinations when objections are raised.") (emphasis in original) (citations omitted). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Although, in absence of such objections, the Court need not make any review, "the better practice" is to afford "some level of review" to dispositive issues, even where a *de novo* determination is not required. *Henderson v. Carlson,* 812 F.2d 874, 878 (3rd Cir.), *cert. denied,* 484 U.S. 837, 108 S.Ct. 120, 98 L.Ed.2d 79 (1987). The Court may adopt the Recommendation in its entirety, or in part; the Court retains final authority of judgment in the case. *Delgado,* 782 F.2d at 82.

## III. *ANALYSIS*

In a diversity case, the choice of law rules in the forum state govern which substantive law will be applied. *Korth v. Mueller,* 310 F.Supp. 878, 880 (W.D.Wis. 1970). Wisconsin, the forum state, has substantial interests because the plaintiff, while an Illinois resident, sought treatment and was treated in Wisconsin. Thus, the underlying facts giving rise to the litigation occurred in Wisconsin. The parties have not contested the choice of law and, therefore, the Court agrees with the determination by the Magistrate Judge that Wisconsin law applies.

### A. Whether Plaintiff has Established a Material Factual Dispute Precluding Summary Judgment.

Defendants seek summary judgment on the grounds that plaintiff has failed to produce an expert opinion that would tend to establish as a triable issue whether defendants were negligent in their diagnosis and treatment of plaintiff and that said negligence resulted in plaintiff's injury. Defendants argue that it has presented a *prima facie* case that a triable issue does not exist and that, to sustain its burden in proving that a triable issue does exist, plaintiff must present specific facts. Defendants assert that the plaintiff has failed to meet its burden. Plaintiff argues that he has presented

triable issues of fact within the facts surrounding his treatment by defendants and by his expert's testimony.

■■■ Federal Rule of Civil Procedure Rule 56(c) states "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment shall be granted. *Local 1545, United Mine Workers of America v. Inland Steel Coal Co.,* 876 F.2d 1288, 1292 (7th Cir.1989); *Board of Regents v. Mussallem,* 94 Wis.2d 657, 289 N.W.2d 801, 808 (1980) (citing *Taterka v. Ford Motor Co.,* 86 Wis.2d 140, 271 N.W.2d 653 (1978)). Only "genuine" issues of "material and outcome determinative fact" will defeat an otherwise "proper" motion for summary judgment. *Vasquez v. Hernandez,* 60 F.3d 325, 328 (7th Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). "A genuine issue of material fact exists only where there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir.1990) (citing *Wolf v. City of Fitchburg,* 870 F.2d 1327 (7th Cir.1989)). "[M]aterial" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■■■ The moving party bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Board of Regents,* 289 N.W.2d at 809 (1980); *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *see also Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (the moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue); *see also Rollins Burdick Hunter of*

*Wisconsin, Inc. v. Hamilton,* 101 Wis.2d 460, 304 N.W.2d 752, 757 (1981) ("[t]he moving party must establish a record sufficient to demonstrate to the satisfaction of the Court that there is no triable issue of material fact on any issue presented"). "If the material facts are not in dispute and if the inferences which may reasonably be drawn from the facts are not doubtful and lead only to one conclusion, then only a matter of law is presented which should be decided upon the motion." *Spitz v. Continental Casualty Co.,* 40 Wis.2d 439, 162 N.W.2d 1, 4 (1968); *Wolf v. F & M Banks,* 193 Wis.2d 439, 534 N.W.2d 877, 880 (Ct.App.1995) (citing Wis.Stat. § 802.08(2), "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."). The moving party may meet its burden of showing an absence of a material issue by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554; *Bantz v. Montgomery Estates, Inc.,* 163 Wis.2d 973, 473 N.W.2d 506, 510 (App.1991). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Vasquez,* 60 F.3d at 328 (citing *Cuddington v. Northern Indiana Public Serv. Co.,* 33 F.3d 813 (7th Cir.1994)); *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Santiago,* 894 F.2d at 221; *United Mine Workers,* 876 F.2d at 1292; *Hunter,* 304 N.W.2d at 757. If the moving party meets its burden, once it has established "a *prima facie* case for summary judgment," the opposing party "may not rest upon the mere allegations or denials of the pleadings, but must, by affidavits or other statutory means, set forth specific facts showing that there exists a genuine issue requiring a trial." *Board of Regents,* 289 N.W.2d at 809 (citing Wis.Stat. § 802.08); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Maynard v. Port Publications,* 98 Wis.2d 555, 297 N.W.2d 500, 504 (1980); *Bantz,* 473 N.W.2d at 510.

■■ Under Wisconsin law, "[plaintiff] must establish four elements to prevail on [his] negligence claim: (1) a duty of care on

the part of defendants; (2) a breach of that duty; (3) a causal connection between the breach and the injury to [plaintiff]; and (4) an actual loss or damages resulting from the injury." *Hammann v. U.S.A. and Barron County, Wis.*, 24 F.3d 976, 979 (7th Cir.1994). The party alleging negligence has the burden of production and proof on these elements. *Transportation Ins. Co. v. Hunzinger Const. Co.*, 179 Wis.2d 281, 507 N.W.2d 136, 139 (Ct.App.1993) ("The ultimate burden ... of demonstrating that there is sufficient evidence to either continue with the trial ... or to go to trial at all ... is on the party that has the burden of proof on the issue that is the object of the motion."); *Froh v. Milwaukee Medical Clinic, S.C.*, 85 Wis.2d 308, 270 N.W.2d 83 (Ct.App.1978).

 "In order to hold a physician liable, the burden is upon the plaintiff to show that the physician failed in the requisite degree of care and skill. That degree of care and skill can only be proved by the testimony of experts." *Froh*, 270 N.W.2d at 85. "The lack of expert testimony on the question of causation results in an insufficiency of proof where the issue involves technical, scientific, or medical matters which are beyond the common knowledge or experience of jurors." *Ollman v. Wis. Health Care Liab. Ins.*, 178 Wis.2d 648, 505 N.W.2d 399, 405 (Ct.App. 1993). However, expert testimony is not required where the care of the patient is "nonmedical, administrative, ministerial or routine." *Kujawski v. Arbor View Health Care Ctr.*, 139 Wis.2d 455, 407 N.W.2d 249, 252 (1987).

 Plaintiff's case is unlike *Kujawski*, "where the use or nonuse of restraints was found to involve a matter of routine care and thus, expert testimony was not necessary." (Recommendation, at 6.) In plaintiff's case, the diagnosis of recurrent subluxation of the shoulder and resultant treatment including arthroscopy, arthroscopic surgery, capsular shift repair and physical therapy, involved medical treatment, nursing, and hospital care of a professional level. Furthermore, plaintiff's occupation as a pitcher invoked particular concerns that fall within the specialized realm of sports medicine: the appropriate level of pain the plaintiff could expect to experience and physical therapy tailored to his profession as a major league pitcher. Therefore, plaintiff's case is not "within the realm of the ordinary experience of mankind." *Kujawski*, 407 N.W.2d at 253.

 Because plaintiff's case involves "matters requiring special knowledge[,] ... skill, [and] experience" plaintiff must present expert testimony to establish the elements of his negligence claim. A review of the record reveals that plaintiff named only one expert witness, Dr. James Hill, M.D. The testimony includes only one deposition of Dr. Hill and an affidavit appended to plaintiff's Response to Defendants' Motion for Summary Judgment. The Court notes that plaintiff submitted his affidavit after the Court had denied plaintiff's Motion to Name Expert or Clarify. However, in the interests of fairness and because all doubts must be resolved in favor of the nonmoving party, the Court will consider Dr. Hill's affidavit. The Court will first examine plaintiff's proof of the standard of care and alleged breach of that standard of care. Second, the Court examines plaintiff's proof of causation.

The deposition of plaintiff's expert witness reveals no evidence establishing the appropriate standard of care defendants owed plaintiff or that defendants breached this standard of care. At deposition, plaintiff's only named expert, Dr. Hill, stated clearly that he had not "formulated any opinions with regard to the care and treatment that Dr. Sullivan provided to [plaintiff]." (Hill Depo. at 4.) Furthermore, Dr. Hill limited his statements at deposition to his care of plaintiff. (Hill Depo. at 4.) Dr. Hill stated that he would not "render opinions at all with regard to the care and treatment that Dr. Sullivan provided" at trial. (Hill Depo. at 12.) When asked about Dr. Sullivan's decision to perform surgery on plaintiff, Dr. Hill stated that he had no opinion. (Hill Depo. at 17.) Finally, when asked about Dr. Sullivan's "surgical technique or how he performed the surgery," Dr. Hill again stated he had no opinion. (Hill Depo. at 17.)

Dr. Hill's affidavit provides some evidence as to the appropriate standard for a portion of the treatment defendants rendered to

plaintiff. Nonetheless, Dr. Hill fails to clearly identify the standard of care defendants, in their field of specialty, owed plaintiff. Nor does he anywhere assert that defendants breached that standard of care. In Dr. Hill's affidavit, Dr. Hill stated that he thought the questions regarding defendants' care and treatment of plaintiff related only to Dr. Sullivan's decision to perform surgery and Dr. Sullivan's surgical technique. (Hill Aff. ¶¶ 3, 4.) Dr. Hill states that he has an opinion regarding Dr. Sullivan's care and treatment of plaintiff, but he does not state what this opinion might be. (Hill Aff. ¶¶ 3, 4.) Then Dr. Hill provides an opinion regarding two aspects of the treatment defendants' rendered to plaintiff: *"if* [plaintiff] was complaining of pain in the shoulder during the time he was under Dr. Sullivan's care and treatment, then he should not have been released to pitch" and *"if* [plaintiff] exhibited limited range of motion during his treatment then he should not have been pitching at full speed for extended periods of time." (Hill Aff. ¶¶ 6, 7) (emphasis added).

If the Court construes Dr. Hill's affidavit as an expert opinion finding that defendants breached the standard of care they owed plaintiff, there is still the element of causation. Nowhere does Dr. Hill give an opinion that defendants' alleged breach of care was the cause of plaintiff's injury. In fact, the affidavit does not address the issue of causation at all. The deposition of Dr. Hill, however, does address the issue of causation, but it seems to resolve it in favor of the defendants. When asked what he thought was the cause of plaintiff's partial torn rotator cuff observed on April 17, 1993, Dr. Hill stated that it was "a combination of [plaintiff's] old injury and [plaintiff's] activity." (Hill Depo. at 15.) When asked if he had an opinion as to the cause of plaintiff's subluxation, Dr. Hill stated "that's a difficult question to answer because the procedure Dr. Sullivan performed was for instability, and I don't know if this is a further aggravation of something he had after surgery or something that recurred in February of 1993 as an acute event." (Hill Depo. at 16–7.) Finally, Dr. Hill stated that plaintiff had "rehabbed fairly well" until February, 1993 when plaintiff began spring training and "felt a pop and expe-rienced more discomfort in his right shoulder." (Hill Depo. at 13.)

Once defendants established "a *prima facie* case for summary judgment," plaintiff could not simply "rest upon mere allegations or denials of the pleadings, but must . . . set forth *specific facts"* of a triable issue. *Board of Regents*, 289 N.W.2d at 809 (emphasis added). The fact that Dr. Hill has an unidentified opinion as to the standard of care of defendants is not a specific fact that presents a triable issue.

Plaintiff argues that he is entitled to explore Dr. Hill's changed testimony at trial and, at trial, defendant would have the opportunity to explore Dr. Hill's opinions. *Peeples v. Sargent*, 77 Wis.2d 612, 253 N.W.2d 459 (1977). Plaintiff misunderstands the Supreme Court of Wisconsin's reasoning in *Peeples*. Plaintiff argues that the Court allowed the expert to present an opinion that had changed from the opinion the expert had given at deposition. But this is not correct. The Court stated it was uncertain that the expert's opinion had changed because of the way in which the questions had been asked at deposition. *Peeples*, 253 N.W.2d at 467.

At the expert's deposition in *Peeples*, the question was framed in such a way that the expert felt uncomfortable answering it. The question was whether the expert had an opinion as to "whether or not [defendant] was guilty of committing malpractice." The expert responded "I'm unwilling to say." His attorney objected and suggested the question be re-phrased. Counsel declined to re-phrase the question. In the present case, Dr. Hill was not asked to render a legal opinion, which the medical expert in *Peeples* was not qualified to do, but was asked to render a medical opinion, which was clearly within the realm of Dr. Hill's qualifications and expertise. Like the doctor in *Peeples*, Dr. Hill was represented by counsel at the deposition. But, unlike the doctor's counsel in *Peeples*, Dr. Hill's counsel did not object or ask defendants' counsel to re-phrase the question. Furthermore, unlike *Peeples*, defendants' counsel gave Dr. Hill several different opportunities to express an opinion. These questions were asked at various times

throughout the deposition and were phrased clearly: "Have you formulated any opinions with regard to the care and treatment that Dr. Sullivan provided to [plaintiff]?" (Hill. Depo. at 4); "Would I be correct [in stating that your opinion] would be limited to basically your care and treatment of [plaintiff]?" (Hill Depo. at 4); "If you are called to testify in this case if this case proceeds to trial, I want to be sure that you are not going to come in and render opinions at all with regard to the care and treatment that Dr. Sullivan provided [plaintiff]; would that be ... correct?" (Hill Depo. at 12); "Did you formulate any opinion ... as to what the cause was of that wear and tear of [plaintiff's] shoulder, the rotator cuff? What was that opinion?" (Hill Depo. at 14–5); "I assume that you are not critical of Dr. Sullivan in his decision to do the procedure, correct?" (Hill Depo. at 17); "You have no opinion with regard to his surgical technique or how he performed the surgery, correct?" (Hill Depo. at 17.)

Plaintiff contends that Dr. Hill believed that the questions asked of him at the deposition "related only to the decision to perform surgery and the surgical technique." (Hill. Aff. ¶ 4.) A review of the deposition reveals that only the last two questions, asked far into the deposition, can be seen as framed in such context. Very early in the deposition, before any mention of a particular procedure had been made, Dr. Hill was asked "Have you as far as your involvement in this case is concerned, have you formulated any opinions with regard to the care and treatment that Dr. Sullivan provided to Jason Zimbauer?" Dr. Hill responded, "No, I have not." (Hill Depo. at 4.) This question was only the second question asked of Dr. Hill. The first was "do you know Dr. Sullivan at all?" to which Dr. Hill stated, "No, I don't." (Hill Depo. at 4.) The third question, immediately following, was "So as far as your deposition today is concerned, would I be correct it would be limited to basically your care and treatment of Jason?" Dr. Hill answered, "Yes." (Hill Depo. at 4.) Dr. Hill was asked "One of the things I wanted to be sure I'm clear on today ... is that if you are at some point in time called to testify in this case ... I want to be sure that you are not going to

come in and render opinions at all with regard to the care and treatment that Dr. Sullivan provided; would that be a correct statement?" (Hill Depo. at 12.) Defendants' counsel asked this question immediately after asking questions regarding Dr. Hill's review of Dr. Sullivan's records concerning plaintiff's medical case. (Hill Depo. at 11.) At this point in Dr. Hill's deposition, no mention of any particular procedure performed by defendants on plaintiff had been made.

Defendants' language is clear and pointed: "care and treatment" "have you formulated any opinions" "render opinions at all." Defendants' counsel's use of repetition and the context in which the questions were framed simply does not support plaintiff's claim that Dr. Hill did not understand the questions. In addition, plaintiff's counsel did not object to or ask clarification of the questions during the deposition. The argument that plaintiff's expert misunderstood the questions asked of him is unconvincing. Rather, the expert's lack of familiarity with defendants' medical records on plaintiff is striking. Plaintiff had from the time he chose Dr. Hill as his expert, January 29, 1994, until the date of Dr. Hill's deposition by defendants, January 10, 1995, to ensure that Dr. Hill had access to and had familiarized himself with these medical records.

Plaintiff has failed to produce expert opinion of the standard of care defendants owed plaintiff and that defendants breached that standard of care. Furthermore, plaintiff has failed to produce any evidence of causation. The plaintiff has failed to establish a material factual dispute that would preclude the award of summary judgment to defendants.

### B. Whether *Res Ipsa Loquitur* Applies

Plaintiff argues that the doctrine of res ipsa loquitur applies. *Res ipsa loquitur* is a rule of evidence that allows negligence to be inferred in certain fact situations. *Peplinski v. Fobe's Roofing, Inc.*, 193 Wis.2d 6, 531 N.W.2d 597, 599 (1995). In medical malpractice, three conditions must be met before the doctrine of *res ipsa loquitur* may be invoked: "(a) either a layman is able to determine as a matter of common knowledge

or an expert testifies that the result which has occurred does not ordinarily occur in the absence of negligence, (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant, and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event." *Peplinski*, 531 N.W.2d at 601 (citing *Lecander v. Billmeyer*, 171 Wis.2d 593, 492 N.W.2d 167, 170–1 (Ct.App.1992)); *see Francois v. Mokrohisky*, 67 Wis.2d 196, 226 N.W.2d 470, 473 (1975). In the present case, therefore, *res ipsa loquitur* may be invoked if a layperson was "able to say as a matter of common knowledge that the consequences of the professional treatment [were] not those which ordinarily result if due care is exercised." *Kelly v. Hartford Casualty Insurance Co.*, 86 Wis.2d 129, 271 N.W.2d 676, 678 (1978) (citing *Fehrman v. Smirl*, 20 Wis.2d 1, 121 N.W.2d 255 (1963)).

■ Plaintiff argues that it is "within the layman's common knowledge that if a pitcher's shoulder hurts, that he should not pitch until the cause is determined, and that any advice to the contrary could cause permanent harm to the shoulder." (Plaintiff's Response to Defendants' Motion for Summary Judgment, at 6–7.) Plaintiff fails to understand the context in which the issue must be raised. Plaintiff was a professional pitcher employed by a major league baseball team. Plaintiff engaged in certain kind of activities the common layperson would be unfamiliar with. Plaintiff's job required him to repeatedly move and stress his arm and shoulder in ways unusual for the common layperson. In order to perform his job, plaintiff underwent highly specialized training and practice. The context of plaintiff's condition is not only one of a technical diagnosis but also within the specialized field of sports medicine. In sports, pain can be caused by using muscles that haven't been used in a particular manner before. After an injury, pain can result from stretching muscles that hadn't been stretched during recuperation and which now need to be reconditioned. Only experts in sports medicine and rehabilitation are qualified to know the difference. The issue, therefore, is whether or not it is within the layperson's common knowledge that a partial torn rotator cuff and anterior subluxation of a shoulder do not ordinarily occur in the absence of negligence. The answer to this question is most certainly outside the layperson's common knowledge.

■ Wisconsin allows the use of *res ipsa loquitur* where "the testimony and the medical records taken as a whole would support the inference of negligence or if direct testimony is introduced that the injury in question was of the nature that does not ordinarily occur if proper skill and care are exercised." *Kelly*, 271 N.W.2d at 678. There is no direct testimony in the present case. And the Court notes with dismay the absolute lack of medical records of any kind. The testimony and records before us reveal that Dr. Hill himself had difficulty in determining the cause of plaintiff's injuries. When asked what he thought was the cause of plaintiff's partial torn rotator cuff observed on April 17, 1993, Dr. Hill stated that it was "a combination of [plaintiff's] old injury and [plaintiff's] activity." (Hill Depo. at 15.) When asked if he had an opinion as to the cause of plaintiff's subluxation, Dr. Hill stated "that's a difficult question to answer because the procedure Dr. Sullivan performed was for instability, and I don't know if this is a further aggravation of something he had after surgery or something that recurred in February of 1993 as an acute event." (Hill Depo. at 16–7.) Certainly, if plaintiff's expert witness, an orthopedic specialist who "treat[s] mainly athletic injuries to the shoulder and knee" (Hill Depo. at 5) cannot determine that plaintiff's injuries would not normally occur absent negligence, a layperson cannot make that determination.

Furthermore, the instrumentality which caused plaintiff's injury is unknown. As noted above, Dr. Hill had "difficulty" establishing the cause of plaintiff's right shoulder anterior subluxation because he "did not know if [the injury] was a further aggravation of something [plaintiff had after surgery or something that recurred in February of 1993 as an acute event." (Hill Depo. at 17.) And Dr. Hill testified that plaintiff's partial

torn rotator cuff was "a combination of [plaintiff's] old injury and [plaintiff's] activity." (Hill Depo. at 15.) Thus, plaintiff's injury could have been caused or aggravated by plaintiff's use and movement of his arm. Plaintiff's movement and use of his own arm and shoulder is not within the defendants' exclusive control. We therefore cannot conclude that the instrumentality causing plaintiff's injury was within defendants' exclusive control. Accordingly, the doctrine of *res ipsa loquitur* is not applicable in the present case.

 Plaintiff has clearly been injured. He cannot pitch and continues to experience pain. Not only has his pitching career ended, but Dr. Hill testified that plaintiff should not even "casually . . . be throwing a baseball to his kids on Sundays." (Hill Depo. at 11.) Plaintiff's arthritis will increase to a point where he will need a total shoulder replacement. (Hill Depo. at 16.) Dr. Hill further testified that plaintiff "should avoid any overhead labor[,] any repetitive usage of his arm and any heavy lifting greater than 25 pounds." (Hill Depo. at 24.) However, "a physician is not an insurer of the results of his diagnosis or procedures." *Miller v. Kim, M.D.*, 191 Wis.2d 187, 528 N.W.2d 72, 77 (Ct.App.1995) (citing *Francois*, 226 N.W.2d at 472); *see Schuster v. Altenberg*, 144 Wis.2d 223, 424 N.W.2d 159, 162 (1988). Defendants are not liable for an action in negligence unless they "fail[ ] to exercise that degree of care and skill which is exercised by the average practitioner in the class to which [they] belong[ ], acting in the same or similar circumstances." *Schuster*, 424 N.W.2d at 161–2 (citing *Shier v. Freedman*, 58 Wis.2d 269, 206 N.W.2d 166 (1973)).

Plaintiff has failed to establish the elements of negligence under Wisconsin law. The purpose of summary judgment is "not to try issues of fact but to avoid trials where there is nothing to try." *Hunter*, 304 N.W.2d at 757 (citing *Maynard*, 297 N.W.2d at 504). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

Plaintiff has failed to present any evidence whereby a reasonable jury viewing the evidence in a light most favorable to plaintiff could find or infer negligence. There are no genuine issues of material fact. Therefore, plaintiff's cause of action cannot survive summary judgment and is dismissed.

## IV. CONCLUSION

After a careful review of the entire record and applicable law, the Court is in agreement with legal and factual finds of Magistrate Judge Aaron E. Goodstein. Therefore, this Court adopts the Recommendation of Magistrate Judge Goodstein, and the defendants' Motion for Summary Judgement is **GRANTED** and this cause of action is **DISMISSED**.

**SO ORDERED.**