178 Wis.2d 648 (1993)
505 N.W.2d 399
John J.OLLMAN, Sr., Plaintiff-Appellant,[]
v.
WISCONSIN HEALTH CARE LIABILITY INSURANCE PLAN, Frank E. Berridge, M.D., and Wisconsin Patients' Compensation Fund, Defendants-Respondents,
METROPOLITAN LIFE INSURANCE COMPANY, Subrogated Defendant.
No. 91-2344.
Court of Appeals of Wisconsin.
Submitted on briefs January 6, 1993.
Decided July 7, 1993.
*653 For the plaintiff-appellant the cause was submitted on the briefs of Christopher T. Hale and Brian D. Trexell of Kravit, Gass & Weber, S.C., of Milwaukee.
For the defendants-respondents the cause was submitted on the briefs of Donald R. Peterson and Peter F. Mullaney of Peterson, Johnson & Murray, S.C., of Milwaukee.
Before Sullivan, Fine and Schudson, JJ.
SULLIVAN, J.
John J. Ollman appeals from a judgment dismissing his medical malpractice action *654 against Dr. Frank E. Berridge, a surgeon. A jury determined that Dr. Berridge was not negligent in his care and treatment of Ollman. Ollman contends that the trial court erred in the following respects: (1) refusing the requested instruction on res ipsa loquitur; (2) refusing the falsus in uno instruction; (3) excluding opinion testimony of nurse Kathleen M. Roos; (4) striking opinion testimony or Dr. Fetherston; and (5) denying Ollman's motion to compel discovery of a letter in Dr. Berridge's possession containing Board of Inquiry conclusions concerning his surgeries. We affirm on all issues.

BACKGROUND
Ollman adduced evidence at trial that on August 14, 1983, Dr. Michael P. Fetherston, Ollman's treating physician, admitted Ollman to the hospital for an intestinal obstruction. Because Dr. Berridge had performed various intestinal surgeries on Ollman in the past, Dr. Fetherston notified Dr. Berridge of Ollman's hospitalization. On August 23, 1983, Dr. Berridge performed surgery on Ollman. During that operation, Dr. Berridge encountered numerous adhesions in Ollman's abdomen that were the result of radiation treatments for a previous cancerous condition. In his attempt to free the adhesions, Dr. Berridge nicked Ollman's small intestine at least twice, spilling fecal matter into the abdominal cavity. Dr. Berridge also nicked Ollman's gallbladder, necessitating its removal. As a result of the complications of the first surgery, Ollman developed an abscess in his abdomen, necessitating emergency surgery on August 31, 1983. During that second surgery, Dr. Berridge made an incision, entered it by hand, and inadvertently damaged Ollman's spleen, necessitating its removal. Dr. Berridge then reopened *655 the incision from the first operation, and drained an abscess.
As a result of the first operation, Ollman was left with a one-quarter inch stoma, an abdominal opening for fecal discharge, which is not long enough to allow a proper seal between the stoma and the ileostomy pouch that Ollman wears.[1] Thus, Ollman experiences unpredictable fecal leaks that have affected his lifestyle. Ollman argued that Dr. Berridge was negligent in his failure to install a drain tube in the gallbladder site, in his premature order to discontinue antibiotics, and in his failure to examine Ollman after the first surgery to locate the source of Ollman's abdominal pain.

RES IPSA LOQUITUR
Ollman argues that the trial court erred when it rejected his request for submission of a res ipsa loquitur instruction to the jury. At the jury instruction conference, Ollman argued that the instruction was necessary because his expert could not testify to any particular act of negligence in the second surgery.[2]
*656 [1]
The res ipsa loquitur instruction should be given when:
(a) either a layman is able to determine as a matter of common knowledge or an expert testifies that the result which has occurred does not ordinarily occur in the absence of negligence, (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant, and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event.
Lecander v. Billmeyer, 171 Wis. 2d 593, 601-02, 492 N.W.2d 167, 170-71 (Ct. App. 1992). While the "[g]iving of the res ipsa loquitur instruction in general is a question of law which this court reviews independently," we give deference to the trial court's discretionary determination that the evidence offers a full and complete explanation of the event. Id. at 602, 492 N.W.2d at 171. In this case, the trial court reasoned that the instruction was inappropriate because Ollman had introduced specific acts of alleged negligence which fully explained his injuries and the evidence left no inference to be drawn by the jury. We affirm the trial court's discretionary determination.
Dr. Sheldon Morris Solochek, Ollman's expert, testified that the injuries suffered by Ollman as a result of the second surgery were the unnecessary incision and the unnecessary removal of the spleen. Dr. Solochek testified that the extra incision could have been avoided if Dr. Berridge had conducted an examination *657 of Ollman's abdomen before surgery to locate the source of Ollman's pain. Dr. Berridge's failure to examine Ollman, in Dr. Solochek's opinion, was a deviation from the standard of ordinary care.
Dr. Solochek attributed the removal of the spleen to the manner in which Dr. Berridge approached the spleen after making the incision. Dr. Solochek testified:
Well, there again the way the spleen was approached, he blindlyknowing that once you The spleen is such a fragile organ that if you're going to put your hand above it and tear up adhesions, you're going to rupture the capsule almost a hundred percent, and you're going to get massive bleeding, and so doing it the way apparently it was done by the operative report, I find that to be a departure from the standard of care also.
The "blind" approach to the spleen, like the "blind nasal intubation" in Lecander, 171 Wis. 2d at 604, 492 N.W.2d at 171-72, was the alleged specific act of negligence that caused the unnecessary removal of the spleen.
[2]
From the evidence, we are satisfied that the trial court acted within the ambit of its discretion when it determined that the evidence provided a full and complete explanation of the injuries suffered by Ollman during the second surgery. Thus, we affirm the trial court's refusal to give the res ipsa loquitur instruction as requested by Ollman.

FALSUS IN UNO
Ollman argues that the trial court erroneously exercised its discretion when it refused to submit a falsus in uno instruction to the jury. That instruction, Wis JICivil 405, provides:

*658 If you become satisfied from the evidence that any witness has willfully testified falsely as to any material fact, you may, in your discretion, disregard all the testimony of such witness which is not supported by other credible evidence in the case.
Ollman reasons that because Dr. Berridge had testified falsely, the instruction should have been given.
[3-5]
The decision whether or not to give the falsus in uno instruction is within the broad discretion of the trial court. State v. Robinson, 145 Wis. 2d 273, 281, 426 N.W.2d 606, 610 (Ct. App. 1988). Such decisions will be upheld if they "are the result of a rational mental process and are reasoned and reasonable." Id. If the instructions, as given, adequately cover the applicable law, there is no error. Id.
Wisconsin's falsus in uno instruction is a derivation of the old maxim, falsus in uno, falsus in omnibus, or translated, "false as to one thing, false as to all things." See 4 JONES ON EVIDENCE § 29.12 (6th ed. 1972). This maxim is an outgrowth of the early rule that a person who was convicted of wilful perjury was not a competent witness in any other case. Id. Consequently, in older cases, the falsus in uno instruction was sometimes formulated so that, if the jury believed a witness to be lying, it must disregard that person's entire testimony. Annotation, Modern View as to Propriety and Correctness of Instructions Referable to Maxim "Falsus in Uno, Falsus in Omnibus," 4 A.L.R.2d 1077, 1081-84 (1949). The more common instruction, however, like Wisconsin's instruction, is given in a form that "permits" a jury to disregard the testimony of the witness, if it so chooses. See id. at 1078.
*659 In general, the falsus in uno instruction has fallen into disfavor among the courts of this country.[3]See id. "The now prevailing attitude ... is one of tolerance and sufferance. The instructions labor under faint praise, and are generally regarded as of little assistance to juries." Id. (footnotes omitted). Professor Wigmore wrote the following criticism of the maxim:
It may be said, once for all, that the maxim is in itself worthless;  first, in point of validity, because in one form it merely contains in loose fashion a kernel of truth which no one needs to be told, and in the others it is absolutely false as a maxim of life; and secondly, in point of utility, because it merely tells the jury what they may do in any event, not what they must do or must not do, and therefore it is a superfluous form of words.
3A WIGMORE ON EVIDENCE § 1008 (Chadbourn rev. 1970) (footnote omitted).
[6]
In this state, a falsus in uno instruction is appropriate only in situations where a witness wilfully and intentionally gives false testimony relating to a material fact, and is not proper where there are "[m]ere discrepancies in the testimony that are most likely *660 attributed to defects of memory or mistake." State v. Williamson, 84 Wis. 2d 370, 394, 267 N.W.2d 337, 348 (1978). In previous cases discussing a trial court's refusal of the falsus in uno instruction, this court and the supreme court have held that no error existed because the instruction would have been inappropriate under the circumstances. See, e.g., id. at 394-95, 267 N.W.2d at 348-49; Robinson, 145 Wis. 2d at 282-83, 426 N.W.2d at 611. In the present case, the trial judge refused to give the falsus in uno instruction. Ollman argues that the instruction should have been given because Dr. Berridge admitted to having testified falsely as to "(1) the cause of the complications of the first surgery ... and (2) the reason he ruptured the spleen in the second surgery ...." Ollman also argues that "Dr. Berridge admitted to falsifying his testimony and a medical record on the stand."
In refusing to give the falsus in uno instruction, the trial judge concluded that the instruction should not be given because Dr. Berridge "did acknowledge [the operating report] was false." The trial court's ruling, however, only addresses the issue of the medical record and is unclear as to whether the trial judge believed that Dr. Berridge had wilfully and intentionally given false testimony.
[7]
Ollman argues that the judge erroneously exercised her discretion based upon a mistaken legal conclusion that a falsus in uno instruction is not appropriate where the witness later admits to having testified falsely. Cf. Oostburg State Bank v. United Savings & Loan Ass'n, 130 Wis. 2d 4, 11-12, 386 N.W.2d 53, 57 (1986) (reliance on an incorrect legal standard evidences an erroneous exercise of discretion). We agree that such reasoning would be *661 erroneous. Thus, if the trial judge relied on such reasoning, the judge erroneously exercised her discretion in denying the instruction.[4] We conclude, however, that if any such error occurred, it was harmless because the jury was given the standard instructions for credibility of witnesses and weight of evidence, see Wis JICivil 215,[5] and Ollman's counsel was permitted *662 to fully argue any inconsistencies in Dr. Berridge's testimony to the jury.[6]
Under the standard jury instruction Wis JICivil 215, the jury is instructed that it is the sole judge of credibility of witnesses and of the weight to be given to the testimony. The jurors are to consider many factors, including a witness's bias, interest in the case, conduct, and demeanor, as well as facts and circumstances appearing in the trial. Jurors may also "take into account matters of ... common knowledge and ... observations and experiences in the affairs of life."
[8, 9]
The falsus in uno instruction informs the jurors that they are allowed to disbelieve, in part or in whole, the testimony of a witness whom they believe has lied. We conclude, however, that the import of the instruction is more than adequately conveyed by the general instruction on credibility and weight of evidence.[7] The *663 principle embodied in the falsus in uno instruction is not unique to the law. That one might disbelieve statements of a known liar is, as a matter of common sense, a principle that applies in all aspects of daily living. Jurors, once informed of their role as the sole judges of credibility, need no further instruction on how to assess the credibility of a witness who they believe has given wilfully false testimony.
Furthermore, in closing arguments, Ollman's attorney was permitted to argue to the jury that Dr. Berridge had lied while giving testimony. Counsel made numerous references to the "fact" that Dr. Berridge had "lied," and gave detailed accounts of the inconsistencies among Dr. Berridge's medical record entries, deposition testimony and trial testimony.
[10]
Thus, under the circumstances, we conclude that, even if the falsus in uno instruction might have been appropriate under the circumstances of this case, the failure to give that instruction was not reversible error because the jury was correctly and adequately informed of its general duty to assess credibility and *664 weigh the evidence, and counsel was allowed to argue the inconsistencies to the jury.[8]

OPINION EVIDENCE OF NURSE ROOS
[11, 12]
Ollman argues that the trial court erroneously exercised its discretion by granting Dr. Berridge's motion in limine to prohibit Nurse Roos, a witness to the surgery, from testifying to her opinion concerning his conduct of the surgeries or of his competency or qualifications as a doctor. This issue was not raised in a post-verdict motion, and thus, is not reviewable as a matter of right. See Rennick v. Fruehauf Corp., 82 Wis. 2d 793, 808, 264 N.W.2d 264, 271 (1978). We decline to address the issue.[9]

*665 ORDER STRIKING OPINION EVIDENCE OF DR. FETHERSTON
Ollman objects to a ruling of the trial court which struck all of Dr. Fetherston's testimony of negligence as to Dr. Berridge's order to terminate antibiotics four days after the first surgery. Ollman contends that, from the fact of his poor condition at the time of the antibiotics' termination and the subsequent aggravation of his condition, the jury could infer the causal relationship between the premature discontinuation of the antibiotics and the subsequent development of the pelvic abscess.
Dr. Fetherston's testimony on the matter was as follows:
Q: Dr. Fetherston, do you have an opinion regarding the extent that antibiotics should be used after a surgery with complication such as those that occurred on Mr. Ollman on August 23rd of 1983?
A: Well, typically in an abdominal surgery without complications, it'syou know, for 48 hours antibiotics are often continued. If there are complications, depending on the complicationsand spilling of bowel contents into the abdomen would be obviously a complicationso I would be concerned about the development of peritonitis or an abscess, and I would think that they would have been continued for ten days to two weeks.
MR. PETERSON [defendant's counsel]: I would move that the answer be stricken as speculative, Judge.
THE COURT: I'm going to overrule you at this point.

*666 MR. HALE [plaintiff's counsel]:
Q: Doctor, in this case did peritonitis and abscesses develop in Mr. Ollman?
A: Yes, they did.
Dr. Fetherston later testified:
Q: .... Do you have an opinion as a family practitioner if it was below the standard of care as a surgeon for Dr. Berridge to discontinue those antibiotics?
A: It would be my opinion as a family physician if there was bowel spillage in the operation that antibiotics should have been continued for a longer period of time.
The trial court determined that, although Ollman had elicited opinion testimony that Dr. Berridge had ordered the premature termination of the antibiotics, and that such conduct fell below the standard of care, Ollman had not asked the question of whether the discontinuation of the antibiotics caused the abscess. Thus, the trial court ordered the remainder of Dr. Fetherston's testimony regarding the antibiotics to be stricken. Ollman contends that the ruling of the trial court evidences an erroneous exercise of discretion due to a mistaken view of the law regarding causation. See Schmid v. Olsen, 111 Wis. 2d 228, 237, 330 N.W.2d 547, 552 (1983) (erroneous exercise of discretion is shown where trial court bases its decision on erroneous view of law). We disagree.
[13]
To establish liability, a plaintiff must prove not only that the defendant's conduct was negligent, but also that the negligent conduct was "the cause in fact or a substantial factor in causing the eventual injury." *667 Dettmann v. Flanary, 86 Wis. 2d 728, 736, 273 N.W.2d 348, 351 (1979). "Causation is a fact; the existence of causation is an inference to be drawn from the circumstances by the trier of fact." Johnson v. Misericordia Community Hosp., 97 Wis. 2d 521, 560, 294 N.W.2d 501, 521 (Ct. App. 1980), aff'd, 99 Wis. 2d 708, 301 N.W.2d 156 (1981). Nonetheless, "the lack of expert testimony on the question of causation results in an insufficiency of proof where the issue involves technical, scientific or medical matters which are beyond the common knowledge or experience of jurors and the jury could only speculate as to what inference to draw." Bruss v. Milwaukee Sporting Goods Co., 34 Wis. 2d 688, 696, 150 N.W.2d 337, 341 (1967).
[14]
In the present case, the causal relationship between the abdominal surgery, the fecal spill, the premature cessation of antibiotics and the abscess requires a determination that is beyond the ken of the average layperson. Ollman, therefore, was required to present expert testimony proving cause, but he failed to do so. Thus, we find no error in the court's striking of the remaining testimony.

EXCLUSION OF BOARD OF INQUIRY CONCLUSIONS
During his deposition, Dr. Berridge was questioned about his knowledge of proceedings before the board of inquiry of St. Michael's Hospital in the Fall of 1983. The subject of the inquiry was, at least in part, Dr. Berridge's first surgery on Ollman on August 23, 1983. In his deposition testimony, Dr. Berridge revealed that he possessed a copy of a letter describing the conclusions of the board that had been written by the board's chairperson and forwarded to the hospital's *668 chief of staff. The letter allegedly stated that the conclusion of the board of inquiry was to require that Dr. Berridge submit to a complete physical and mental examination. More than three years after that deposition testimony, Ollman requested that the court compel Dr. Berridge to produce the letter. The court denied that motion.
The record on appeal contains the motions of counsel, the briefs in support of such motions, and the trial court's order. The record does not contain the transcripts of the hearing on the motion, in which the trial court made its ruling, and presumably, set forth its reasoning. The trial court's order states that Dr. Berridge did not have to produce the letter, that the letter fell within the protections granted by sec. 146.38(2), Stats., and that Dr. Berridge had not "waived" or "released" the information under sec. 146.38(3).[10]
*669 Ollman contends that the trial court's ruling constitutes reversible error for two reasons.
Ollman first argues that without examining the letter, or hearing any evidence regarding its nature, the court did not have sufficient evidence to rule on the motion for a protective order.[11] Because we have no record of the motion hearing or the court's ruling, we are unable to determine what the trial court did, or did not do to ascertain the nature of the letter. Nonetheless, the parties seem to agree that the trial court did not examine the letter in camera. Ollman argues that without an in camera inspection of the document, the trial court could not have properly exercised its discretion in denying his motion to compel.
[15]
This court has previously held that where discovery requests "do not, on their face, request materials and information which fall under the protection of sec. 146.38," but the party upon whom the discovery request was made, nonetheless, objects to producing *670 the document, an in camera inspection of the documents should be utilized to sort out privileged materials. State ex rel. Good Samaritan Medical Ctr. v. Moroney, 123 Wis. 2d 89, 91-92, 365 N.W.2d 887, 889 (Ct. App. 1985). Unlike the request in Moroney, however, Ollman's motion to compel discovery did, on its face, demand information that was clearly protected by sec. 146.38, Stats. In that motion, Ollman requested an order compelling production of a letter identified only as "the 1983 letter outlining the conclusions reached by the Board of Inquiry." Under sec. 146.38(2), conclusions of a review board are confidential, and are not to be disclosed except as specifically provided in that statute.[12] Thus, because Ollman's motion to compel, on its face, requests a particular document identified only as one containing the conclusions of the Board of Inquiry, the trial court did not err in denying that motion without an in camera inspection of the document itself.
[16]
Ollman's second argument is that the trial court erred in ruling that Dr. Berridge's voluntary disclosure of the contents of the letter did not waive the protections offered by sec. 146.38, Stats. Although rulings on discovery motions are within the trial court's discretion, the court's ruling on this issue involved statutory interpretation, which presents a question of law that this court reviews de novo and without deference to the decision of the trial court. Franzen v. Children's Hospital, 169 Wis. 2d 366, 376, 485 N.W.2d 603, 606 (Ct. App. 1992).
*671 [17]
The statute provides that information acquired in connection with the review of the services of a health care provider, and records kept by the reviewing organization, cannot be disclosed "except as provided in sub. (3)." Sections 146.38(1m) and (2), Stats. Subsection (3)(b) provides that the health care provider can consent to the release of such information. Ollman argues that Dr. Berridge's deposition testimony in response to questions regarding the conclusions of the board of inquiry was, in effect, his "consent." Ollman cites no authority for this proposition. We reject the argument that Dr. Berridge implicitly consented to the disclosure of the letter. The record clearly indicates Dr. Berridge's explicit refusal to produce the document.
[18]
Alternatively, Ollman argues that, because the letter containing the conclusions of the board of inquiry had been addressed to a hospital vice president who was not a member of the board of inquiry, the statutory protection was "destroyed." Ollman relies on State v. Dalton, 98 Wis. 2d 725, 732, 298 N.W.2d 398, 401 (Ct. App. 1980), for the proposition that a "privilege" can be destroyed by subsequent disclosures to third parties. Dalton dealt with the statutory privilege between husband and wife under sec. 905.05(1), Stats. The statutory privileges provided in chapter 905 can be waived by the voluntary disclosure or consent to disclosure of the privileged communication. Section 905.11(1), Stats. By contrast, sec. 146.38, Stats., contains no provision for waiver by disclosure. Section 146.38 provides that the only exceptions to the disclosure rule are contained within the statute itself. Accordingly, expressio unius est exclusio alterius  "the expression of one thing is the exclusion of *672 another." BLACK'S LAW DICTIONARY 581 (6th ed. 1990). See also Gottlieb v. City of Milwaukee, 90 Wis. 2d 86, 95, 279 N.W.2d 479, 483 (Ct. App. 1979). Thus, because the list of exceptions found in sec. 146.38 does not provide for the loss of confidentiality due to disclosure to third parties, we conclude that no such waiver exists under the statute.
We therefore affirm the trial court's denial of Ollman's motion to compel disclosure of the letter.
Finally, Ollman requests a new trial in the interest of justice. See sec. 752.35, Stats. His argument merely restates the issues presented on appeal. Because we have found no reversible error on those issues, we reject Ollman's request for a new trial in the interest of justice.
By the Court.Judgment affirmed.
FINE, J. (concurring in part; dissenting in part).
Although I concur in most of the court's opinion, I write separately for two reasons.
First, I cannot join in footnote 8; I do not believe that trial courts should be prevented, as a matter of law, from ever giving a falsus in uno instruction. Rather, whether the instruction is warranted in a particular case should be left to the trial court's informed discretion. In my view, the instruction was warranted here. Nevertheless, the trial court's failure to so instruct the jury does not, in the context of this case and for the reasons largely explained by the majority opinion, require a new trial.
Second, I believe that this case must be remanded so the trial court can examine the letter written by the chairman of the board of inquiry. This letter was characterized by Ollman in his motion to compel discovery *673 as "outlining the conclusions reached" by the board that evaluated Dr. Berridge. The trial court, and, regrettably, this court, both conclude that the letter is privileged under section 146.38(2), Stats., even though neither the trial court nor this court has ever seen the letter. Rather, the majority seizes on the motion's characterization of the letter as the reason to conclude the letter is protected from disclosure, even though the lawyer drafting the motion had also not seen the letter.
Section 146.38(2) protects the "record[s]" of "organizations or evaluators reviewing or evaluating the services of health care providers." The letter at issue here, although written by the board's chairman, may or may not be a "record" of the board. Further, although it may recite the board's conclusions, it may, on the other hand, only recount the writer's personal conclusions. If the letter is not a "record" of the board, it is not within the privilege granted by section 146.38(2) even though it may contain the chairman's own conclusions. See State ex rel. Good Samaritan v. Moroney, 123 Wis. 2d 89, 100, 365 N.W.2d 887, 893 (Ct. App. 1985) (privilege limited to "the records and conclusions of the review committees themselves"). I would remand this case to the trial court for an in camera inspection of the letter, without reaching the issue of waiveron which I express no view.
NOTES
[] Petition to review dismissed.
[1] Dr. Berridge had constructed Ollman's stoma during an operation in 1981 in which Dr. Berridge removed Ollman's cancerous rectum. Dr. Berridge created a new stoma during the surgery of August 23, 1983.
[2] On appeal, Ollman argues that the evidence of both surgeries necessitated a res ipsa loquitur instruction. At trial, however, Ollman conceded to the trial court that he was not relying on the res ipsa loquitur instruction for the first surgery. He stated, "I agree with the Court that there's a straight forward case of negligence as to the first surgery. As to the second surgery I think the testimony was ... that this is the type of injury that does not occur ... absent negligence." Because Ollman did not request the instruction based on the evidence of the first surgery, we limit our review to the evidence of the second surgery.
[3] Some courts appear to have completely rejected the instruction. See, e.g., Fleming v. State, 319 So. 2d 223, 224 (Miss. 1975) ("We have condemned this instruction so often that we hope it should be plain to all that the instruction is not proper."). Even when faced with a statute that required the instruction be given, one court held that although the failure to so instruct the jury was error, such error was harmless. See People v. Agnew, 242 P.2d 410, 842-43 (Cal. App. Dep't Super. Ct. 1952) (The instruction merely "expresses an obvious truth, concerning a subject matter peculiarly within the province of the jury." (citation omitted)).
[4] The record, however, is unclear as to whether the trial judge relied on that reasoning. The trial court explained its ruling on post-verdict motions:

Regarding the Falsus in Uno instruction, that one is not routinely given. The important criteria of the Court is that the defendant must be shown to willfully have given false testimony as to a material issue of fact. The record does not establish that willful false testimony was given. There were inferences by the plaintiff, but that is not enough, and that does not rise to the level necessary to give the instruction.
... Any contradictions of Dr. Berridge regarding prior deposition testimony and his trial testimony was for the jury to evaluate ....
[5] Wis JICivil 215 provides:

You are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. In determining the credibility of witnesses and the weight you give to the testimony of each witness, including expert witnesses, you should consider their interest or lack of interest in the result of this trial, their conduct and demeanor on the witness stand, their bias or prejudice if any has been shown, the clearness of, or lack of clearness of, their recollection, their opportunity for observing and knowing the matters and things given in evidence by them.
The weight you give to the evidence is not to be decided merely according to the number of witnesses on each side. You may find that the testimony of one witness is entitled to greater weight than that of another witness, or even of several other witnesses. In weighing the evidence, you may take into account matters of your common knowledge and your observations and experiences in the affairs of life.
You should also consider all facts and circumstances appearing in the trial which tend either to support or discredit the testimony of a witness, and then give to the testimony of each witness such weight as you believe it is fairly entitled to receive.
[6] The trial judge explained on post-verdict motions:

I allowed the plaintiff's attorney to argue in closing regarding that point, and also the jury was given the instruction on credibility of witnesses. The jury heard the evidence and was permitted to draw their own inferences accordingly.
[7] Our holding comports with the holdings of courts in other jurisdictions. See, e.g., Raia v. Topehius, 332 A.2d 93, 95-96 (Conn. 1973) (although instruction could have been given, failure to do so was not error because instruction "is at best merely advisory" and general credibility instruction is adequate); Anthony v. Douglas, 201 So. 2d 917, 918 (Fla. Dist. Ct. App. 1967) ("Certainly a jury, exclusive of such an instruction, is charged with the duty of determining the weight and credibility of the evidence. It has been observed that the rule `means no more now than that the jury may disbelieve a witness if they think he is lying; but they need no instruction about that ...'" (citation omitted)); Rieth-Riley Constr. Co., 325 N.E.2d 844, 850-51 (Ind. Ct. App. 1975) (although refused instruction was correct statement of the law, other credibility instructions adequately instructed the jury); Commonwealth v. Carey, 439 A.2d 151, 159 (Pa. Super. Ct. 1981) ("The False in One, False in All Rule is much to do about nothing. It mandates nothing and merely gives the jury the right to accept or reject testimony as the jury sees fit. This was adequately explained by the Court in its general charge on credibility." (citation omitted)); see also Annotation, supra, at 1104-06.
[8] The falsus in uno instruction, in this court's opinion, should be abrogated because, offered in addition to the standard instruction on credibility, it may confuse the jury. The general charge is sufficient. Additionally, when a witness's testimony indicates that he may be lying and the court gives the falsus in uno instruction, the jury may accept this as a court determination of the credibility issue. The court, thus, becomes, to some extent, a thirteenth juror. See Annotation, supra, at 1078-79.
[9] Dr. Berridge requests $250 in costs and fees under sec. 809.25(3), Stats., for frivolous appeal of this issue. Dr. Berridge claims that Ollman has misstated the trial court's ruling on the motion in limine as "the trial judge precluded Nurse Roos from testifying with respect to her observations during the surgeries." While it is true that such a statement would be a mischaracterization of the trial court's ruling, we find no such claim in Ollman's brief. We deny Dr. Berridge's motion for costs and fees.
[10] Section 146.38, Stats., entitled "Health care services review; confidentiality of information," provides in part:

(1m) No person who participates in the review or evaluation of the services of health care providers or facilities or charges for such services may disclose any information acquired in connection with such review or evaluation except as provided in sub. (3).
(2) All organizations or evaluators reviewing or evaluating the services of health care providers shall keep a record of their investigation, inquiries, proceedings and conclusions. No such record may be released to any person under s. 804.10 (4) or otherwise except as provided in sub. (3). No such record may be used in any civil action for personal injuries against the health care provider or facility; however, information, documents or records presented during the review or evaluation may not be construed as immune from discovery under s. 804.10 (4) or use in any civil action merely because they were so presented. Any person who testifies during or participates in the review or evaluation may testify in any civil action as to matters within his or her knowledge, but may not testify as to information obtained through his or her participation in the review or evaluation, nor as to any conclusion of such review or evaluation.
(3) Information acquired in connection with the review and evaluation of health care services shall be disclosed and records of such review and evaluation shall be released, with the identity of any patient whose treatment is reviewed being withheld unless the patient has granted permission to disclose identity, in the following circumstances:
(a) To the health care provider or facility whose services are being reviewed or evaluated, upon the request of such provider or facility;
(b) To any person with the consent of the health care provider or facility whose services are being reviewed or evaluated; ....
[11] Ollman's argument addresses the content of the letter itself. He does not raise the issue of whether sec. 146.38, Stats., applies equally to the organization in possession of such records, as well as to a health care provider in possession of the conclusions of the organization. Accordingly, we do not address this issue.
[12] In support of his motion to compel production of the letter, Ollman argued only that Dr. Berridge had waived the statutory privilege of sec. 146.38, Stats. We address this issue below.