**Richard D. SMITH, Plaintiff,**

v.

**SOFAMOR, S.N.C., Defendant.**

No. 96–C–956–S.

United States District Court, W.D. Wisconsin.

May 11, 1998.

Jean Brown, Hausmann-McaNally, S.C., Milwaukee, WI, for Plaintiff.

Thomas J. Arenz, Whyte Hirschboeck Dudek, S.C., Milwaukee, WI, for Defendant.

## MEMORANDUM and ORDER

SHABAZ, Chief Judge.

Plaintiff Richard Smith commenced this products liability and fraud action against the defendant Sofamor, S.N.C., alleging that he was injured when a defective orthopedic bone screw device manufactured by the defendant was attached to his spine during a spinal fusion operation. The matter was referred to the District Court for the Eastern District of Pennsylvania for purposes of multi-district pretrial litigation, MDL Docket No. 1014, and was returned to this Court after completion of discovery and resolution of non-case specific legal issues. The matter is presently before the Court on defendant's case specific motion for summary judgment as contemplated by the MDL transfer order. Jurisdiction is based upon 28 U.S.C. § 1332.

### FACTS

The following facts are undisputed for purposes of the presently pending motion or are facts most favorable to the plaintiff.

Plaintiff experienced significant low back pain with radiation down his right leg and occasional left side discomfort as early as 1987. He was diagnosed as having spondylolisthesis at lumbar level L4–L5 in April 1991. Spondylolisthesis is a forward displacement of one vertebra over another, usually the fifth lumbar vertebra over the body of the sacrum or the fourth lumbar vertebra over the fifth. Plaintiff underwent numerous treatments including prescription pain medication and physical therapy, heat and ice packs, ultrasound treatments and epidural injections. These conservative measures failed to relieve his low back pain.

Plaintiff met separately with Drs. Manz and Narotzky in November 1992. Narotzky again diagnosed plaintiff with spondylolisthesis at the fourth and fifth lumbar vertebrae. Both doctors recommended that plaintiff undergo instrumented fusion surgery. After discussion with both doctors plaintiff consented to fusion surgery.

Spinal fusion surgery is a method of placing bone graft material between two mobile segments of the spine to knit them together as one bony unit and eliminate motion between the segments. Fusion surgery can be performed with or without the use of spinal instrumentation for internal fixation. With or without the aid of internal fixation instruments there is a risk that the fusion will not occur. The failure of fusion is referred to as pseudarthrosis.

Internal fixation instruments are used to provide stability to decrease motion between segments of the spine to allow the bone fusion to knit together. Internal fixation devices act as an internal splint. If a solid fusion is obtained, the device is no longer providing structural support and can be removed. If a solid fusion is not obtained at some point in time the internal fixation device will fail. Internal fixation devices may be attached with hooks, wires or bone screws. When the bone screws are employed they are screwed into the pedicles of a vertebra and connected to rods or plates to stabilize movement between the vertebrae to which they are connected. Defendant manufactures an internal fixation device known as the Cotrel Dubousset System ("CD System") consisting of a variety of rods, bone screws, hooks and connectors which are adapted by the surgeon to fit the patient as appropriate.

Plaintiff's treating physicians Manz and Narotsky worked together as a team performing fusion operations. Narotsky has performed over one thousand spine fusion operations at all levels of the spine using internal fixation devices in approximately eighty percent of those operations. Most of his operations involve the use of pedicle

screw and rod systems. Manz has performed approximately 400 lumbo-sacral fusion operations. Nearly all of these were instrumented operations using bone screws.

On January 6, 1993 Manz and Narotsky performed an anterior/posterior fusion operation at the L4–5 level on the plaintiff. They used defendant's CD System attaching it to the plaintiff's vertebrae by the use of pedicle bone screws at L4 and L5. Plaintiff was discharged from the hospital on January 11, 1993.

Plaintiff's back pain was less after the surgery than before. Plaintiff reported that back pain interfered with his sex life although he had no problem obtaining an erection and reached climax fifty percent of the time. Approximately nine months after the first surgery plaintiff again began experiencing severe pain. A second surgery was performed on plaintiff by Drs. Manz and Narotsky on October 10, 1994. During the second surgery the CD System was removed and the fusion site explored. Fusion was found to be solid on the left but not on the right. The defendant's rods and pedicle screws were removed and replaced with a different manufacturer's fixation device which was secured with new bone screws placed in the same holes.

There is no evidence that the screws broke, failed, produced inflammation or infection in plaintiff. One of the defendant's screw had a slight angulation or "subtle bend". Doctor Manz did not say anything about the condition of the device after surgery and provided one of the screws to plaintiff.

A third surgery was performed in April 1996 at which time the new hardware was removed and the fusion was observed to be complete.

A. Yale Gerol is plaintiff's only expert offered to provide evidence that defendant's CD System caused injury to plaintiff. His opinion, contained in his expert report of May 12, 1997, consists of the following: "Upon review of the medical records of Mr. Richard Smith, it is my opinion that this patient received no benefit whatsoever from the use of the pedicle screw instrumentation in his fusion surgeries. It is my further opinion to a reasonable degree of medical certainty that the pedicle screw instrumentation has resulted in impotence and increased pain and deterioration of his condition."

Gerol was deposed on September 17, 1997 on the topic of plaintiff's injury. Gerol has not met, examined or spoken with the plaintiff. He reviewed portions of plaintiff's medical records. He testified that he generally believed that the spinal fusion operations, with or without the use of an instrument such as the CD System, were ill advised in most cases of low back pain. However, he offered no opinion concerning any negligence on the part of plaintiff's doctors in choosing to perform fusion on plaintiff.

Gerol identified three categories of problems with the use of pedicle screws. First, there is a potential adverse reaction by the body to the presence of a foreign body so close to the spinal canal; second, improper screw placement can damage nearby nerves; third, the screws or device can loosen or fail necessitating another invasive operation.

With specific regard to plaintiff, Gerol testified that the first fusion surgery was ill advised based on his condition. He further testified that plaintiff experienced a burning and numbness in his thigh after the operation because the bone graft was improperly taken from plaintiff's hip. "But there isn't any evidence that the screws broke, failed, produced any inflamation or produced any infection."

Harold L. Alexander also submitted an expert report addressing generally the problems associated with pedicle screws. Inaccurate placement impinging nerves, mechanical failure, osteoporosis leading to late screw migration, infection and inflamation were identified by Alexander as potential problems with pedicle screws. Based on scientific studies twelve percent of patients undergoing fusion surgery employing a pedicle screw device have a screw improperly placed.

## MEMORANDUM

Defendant moved for summary judgment arguing principally that the evidence was insufficient to establish a defect in its product and that there was insufficient evidence of medical causation to support any claim

against it. Because the Court now concludes that there is insufficient evidence as a matter of law to support its finding that defendant's device was the cause of any injury to the plaintiff, the Court does not reach the question of the existence of a defect, nor does it address any other issues raised by the defendant.

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the Court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure.

A fact is material only if it might affect the outcome of the suit under the governing law. Disputes over unnecessary or irrelevant facts will not preclude summary judgment. A factual issue is genuine only if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Rule 56(e) it is the obligation of the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.

An essential element of each of plaintiff's claims is that the implantation of defendant's CD System caused injury to him. Indeed, the multi-district litigation court ordered that no plaintiff could proceed without identification of a case specific expert to support injury and cause:

In PTO 764 the court required each plaintiff to identify at least one duly qualified medical expert who would provide an opinion supporting the plaintiff claim that an *injury* has occurred and a *cause* of that injury was a defendant's product or conduct. It was the transferee court's view that this requirement would assure that there was a sound basis for the plaintiff's claim much like the requirements of parties under the standards governing Fed. R.Civ.P. 11 assuring that there be evidentiary support for a position taken by a party before the court. The plaintiff is required to identify and provide a report for such an expert identification and report prior to remand and the defendant is required to respond with a similar expert prior to remand.

Pretrial Order No. 1235 at 16.

■ This requirement is consistent with Wisconsin law. To establish liability, a plaintiff must prove not only that the defendant's product was defective, but that the product was cause in fact of plaintiff's injury.

"Causation is a fact; the existence of causation is an inference to be drawn from the circumstances by the trier of fact." Nonetheless, "the lack of expert testimony on the question of causation results in an insufficiency of proof where the issue involves technical, scientific or medical matters which are beyond the common knowledge or experience of jurors and the jury could only speculate as to what inference to draw."

*Ollman v. Wisconsin Health Care Liability Ins. Plan,* 178 Wis.2d 648, 667, 505 N.W.2d 399 (Wis.App.1993). Undoubtedly, this is a case which requires medical testimony to establish causation between the device and plaintiff's injury.

■ It is not enough to show that the fusion surgery caused the injury since plaintiff and his doctors, not defendant, chose fusion surgery as the treatment. There is no basis to conclude that plaintiff and his doctors chose fusion surgery as the treatment for his back pain because of defendant's device. In the absence of defendant's device the fusion procedure would almost certainly have been performed without instrumentation or (as it eventually was) with an instrument manufactured by a competitor. To prevail plaintiff must establish that the defendant's instrument caused an injury.

■ Plaintiff's sole support for this factual proposition is the report of Gerol. However, the report and deposition testimony of Gerol are clearly insufficient to create a genuine issue of fact on the question of causation. To be admissible expert testimony on scientific or medical matters must satisfy the two-prong requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). First, the testimony must be reliable in the sense that it is supported by an appropriate

scientific basis. *Cummins v. Lyle Industries,* 93 F.3d 362, 368–69 (7th Cir.1996). Second, it must be relevant—the scientific testimony must "fit" the fact issue in the case. *Id.* at 370. Gerol's testimony satisfies neither prong.

Gerol's report consists of a mere conclusion that since plaintiff's condition worsened after surgery the bad result was caused by the defendant's device. Such a conclusion without any support is not one based on expert knowledge and is not entitled to the dignity of evidence. *Navarro v. Fuji Heavy Industries, Ltd.,* 117 F.3d 1027, 1031 (7th Cir.1997). It has no scientific basis whatsoever. It is undisputed that plaintiff experienced significant and similar pain before his first surgery. It is also undisputed that fusion surgery, instrumented or non-instrumented, sometimes fails even though properly performed and that even when a solid fusion is obtained pain may not be reduced. Under circumstances where symptoms may be the subject of a variety of causes it is insufficient for an expert to opine as to the cause of the symptom without some scientific basis other than his assertion of general experience. *O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090, 1106–1107 (7th Cir. 1994).

Plaintiff justifies the lack of scientific support for its expert's opinion by deflecting blame upon the defendant. "Sofamor deceptively states that Doctor Gerol has no explanation for his opinions. As indicated, that is because Sofamor never asked for clarification or explanation of the opinions rendered in his report." Plaintiff's Brief in Opposition to Sofamor, S.N.C.'s Motion for Summary Judgment at 29. This position of course evidences a fundamental misapprehension of the summary judgment procedure. Rule 56(e) requires the plaintiff to come forth with evidence sufficient to support every essential element of its claim or face summary judgment against it.

But there is no duty to cross-examine or depose your opponent's witnesses so that they can supplement the testimony they failed to give on direct examination or in their affidavit. An expert's affidavit must be sufficiently complete to satisfy the criteria of the *Daubert* decision, and one of those criteria, as we have been at pains to emphasize, is that the expert show how his conclusion is grounded in—follows from—an expert study of the problem.

*Navarro,* 117 F.3d at 1032.

Gerol's testimony is also irrelevant to the present case. Whatever the merits of Gerol's generic opinions about the perils of instrumented fusion surgery, his testimony lacks any connection to the facts of this case. That is, it does not fit. Gerol identified three potential problems with the use of pedicle screws: misplaced screws, allergic or other reaction to the screws by the body and failed or loosening screws or devices. He then eliminated the possible application of two of these problems in his deposition testimony expressly declaring that there was no evidence of any infection or inflamation as a result of the use of the screws nor was there evidence of device failure. This left only screw misplacement as a possible cause of defendant's injuries. However, there is nothing in the record to support the conclusion that the screws were misplaced in plaintiff's surgery. The only evidence at all on this issue is the general testimony of Alexander that misplacement of screws may occur in up to twelve percent of instrumented fusion patients. No attempt has been made to show that plaintiff himself had a misplaced screw.

Furthermore, the undisputed facts tend to negate rather than support Gerol's conclusory opinion. As to impotence, the medical record plainly establishes that plaintiff was not impotent after the surgery involving defendant's device, directly contradicting Gerol's unsupported opinion. As to leg pain, Gerol himself testified that this was caused not by defendants instrument but by an improperly performed bone graft removal.

Accordingly, there is absolutely no basis to find that the instrument defects identified by Gerol played a role in plaintiff's injury. The opinion amounts to a bald conclusion that plaintiff had instrumented fusion surgery and had pain thereafter, therefore the pain must be caused by the instrument. This simply will not satisfy the requirements of *Daubert* or the need to prove causation. Gerol's opinion is nothing more than an invitation to the

jury to join in pure speculation as to the cause of plaintiff's continuing pain.

## CONCLUSION

Plaintiff has brought forth no admissible evidence which would permit a jury to conclude that any of plaintiff's injuries were caused by the use of defendant's pedicle screw CD System. Because such proof is a critical element of any claim advanced by the plaintiff, it is clear that defendant's motion for summary judgment must be granted.

## ORDER

IT IS ORDERED that defendant's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that judgment be entered in favor of the defendant against the plaintiff dismissing plaintiff's complaint and all claims contained therein with prejudice and costs.